## HURT v. THE CITY OF ATLANTA.

1. It was not, in 1892, an essential prerequisite to the lawful construction, longitudinally, in a street of the City of Atlanta, of a bridge the width of which coincided with that of such street and the sidewalks thereto adjacent, that the municipal authorities should give to the owners of lots fronting on such street any notice of an intention to erect such bridge, or take any steps for the appointment of appraisers to assess the damages which such owners might sustain by reason of its construction. Therefore, in having such a bridge built without doing these things, the mayor and general council were not, relatively to such owners, trespassers.

2. Though the erection of such a bridge may have rendered less convenient the means of ingress to and egress from an existing building upon an abutting lot, this was not a "taking" of property within the meaning of that clause of the constitution which declares that "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid."

3. The owner of an abutting lot which was actually "damaged" by the erection of such a structure would have been entitled to compensation; but there were not, in a given case, any damages if the market value of such lot, after the completion of the work and on account thereof, independently of all other causes, was as much as, or more than, it was before the work was done. In this connection, the rules laid down in *Streyer* v. *Georgia Southern & Florida R. Co.*, 90 *Ga.* 56, are applicable, and the decision in that case, upon a review thereof, is affirmed.

4. In arriving at the value, before and after the erection of such a bridge, of a particular abutting lot and a building thereon, evidence as to what the value of the lot would have been without the building, and evidence as to the value of other abutting lots, was relevant.

5. The verdict was fully sustained by the evidence, and the motion for a new trial discloses no reason which would warrant this court in setting it aside.

Argued January 13, 14,—Decided February 26, 1897.

Action for damages. Before Judge Reid. City court of Atlanta. July term, 1896.

*Palmer & Read,* for plaintiff. *J. A. Anderson* and *George Westmoreland,* for defendant.

LUMPKIN; Presiding Justice.

This was an action brought by Mrs. Hurt in 1893 against the City of Atlanta, by which she sought to recover damages alleged to have been occasioned to certain realty owned by her, consisting of a lot with a three-story brick store thereon fronting on Forsyth street. The nature of the case will be readily apprehended from the following condensed statement of the facts.

The city in 1892 had, under express legislative authority, caused to be constructed longitudinally in this street a bridge which spanned a number of railway tracks. The width of the bridge coincided with that of the street and the adjacent sidewalks, and the structure therefore occupied all of the public thoroughfare upon which Mrs. Hurt's property abutted; but it did not encroach upon her land, and no part of the same was actually taken from her. It appeared from the evidence that the erection of the bridge rendered ingress to and egress from the building less convenient than formerly, and consequently impaired its utility and diminished its rental value; but it also appeared that, independently of all other causes, the market value of the property as a whole was considerably enhanced by and because of the erection of the bridge, and that by making alterations in the house so as to properly adjust it to the bridge, it would, even after allowing for the cost of the needed changes, and taking into the account the increase in the value of the land, pay in rents a higher per cent. upon the investment than before. There was a verdict for the city, and Mrs. Hurt moved for a new trial, which was refused. The controlling questions presented by the record will now be stated and briefly discussed.

1. If, relatively to Mrs. Hurt, the city in doing this work was a trespasser, it could not, in any view of the case, set up as a defense against a claim of hers for damages actually sustained in consequence of the erection of the bridge the fact that, by building it, the city had increased

the market value of her property. If the market value of
the freehold was increased, there was, of course, no damage
in that respect; but if there was a loss of rents and profits
caused by a wrongful act on the part of the city, it would
be liable for such loss notwithstanding the increase in the
market value of the property as a whole. *Davis* v. *E. T.,
V. & Ga. Ry. Co.*, 87 *Ga.* 605. But was the city a tres-
passer? The plaintiff claimed that it was, because it had
proceeded to erect the bridge without giving her any notice
of its intention to do so or taking any steps for the appoint-
ment of appraisers to assess the damages which she might
sustain by reason of its construction. In support of this con-
tention, reliance was had upon the following section of the
charter of Atlanta, enacted in 1874: "The said mayor and
general council shall have full power and authority to open,
lay out, to widen, straighten, or otherwise change streets,
alleys, and squares, in the said City of Atlanta. Wherever
the said mayor and general council shall exercise the power
above delegated, they shall appoint two freeholders, and the
owners of said lots fronting on said streets or alleys shall, on
five days' notice, appoint two freeholders, who shall proceed
to assess the damages sustained, or the advantages derived,
by the owner or owners of said lots, in consequence of the
opening, widening, straightening, or otherwise changing,
said streets and alleys—and in case said assessors cannot
agree, they shall select a fifth freeholder; the said assessors
to take an oath that they will faithfully discharge their
duties, and either party to have the right to enter an appeal
to the superior court of Fulton county, within ten days from
the rendition of said award." Acts of 1874, p. 131.

The question whether the mayor and general council
were, in this instance, legally bound to appoint appraisers
and give Mrs. Hurt notice to do so, in order that the per-
sons so selected might "proceed to assess the damages sus-
tained, or the advantages derived," turns upon the true
meaning of the word "damages" as here used. It is obvious

that "to open, lay out, widen" or "straighten" a street necessarily involves the taking of land not hitherto used for street purposes; and therefore, as to any or all of these matters, the damages contemplated by the act can easily and naturally be held to mean compensation to landowners for property thus taken. But it was insisted that the municipal authorities were also empowered to "otherwise change" streets; that the words just quoted were designed to meet just such a case as the present, because the building of a structure like the Forsyth street bridge was "otherwise changing" that street, and that, accordingly, the act of 1874 contemplated the assessment and allowance of incidental damages in a case like this, even though there was no actual taking of a citizen's property. It will be observed that the provisions of that section of the act of 1874 with which we are now dealing were taken from section 11 of the act of 1859, incorporating the town of Warrenton and amending the charter of Atlanta. Acts of 1859, p. 215. In order to ascertain the kind of "damages" referred to by these acts, and for what the same were to be allowed, the acts themselves must be construed in the light of the law as it was understood when they were passed. Prior to the ratification of the present constitution, a municipal corporation, proceeding regularly and within the scope of its authority, was not liable for consequential damages resulting to property owners from paving, grading, or otherwise improving its streets. The question whether it could be held liable for such damages was incidentally involved in the case of *Markham* v. *Mayor & Council of Atlanta*, 23 *Ga.* 402; and though not then decided, Judge Lumpkin intimated very strongly that it should be answered in the negative, and cited authorities supporting that conclusion. In *Mayor & Council of Rome* v. *Omberg*, 28 *Ga.* 46, this same question arose, and it was distinctly decided that the municipality was not liable, the court holding that though the plaintiff had been injured by the grading of a street, yet, as no part of his land had

been touched, it was damnum absque injuria. The first of these two cases was decided at the August term, 1857, of this court; and the second at the March term, 1859. The act amending Atlanta's charter was approved on the 12th day of December following. So it was settled law at the time of its passage, that consequential damages in cases of this character were not allowable; and if the General Assembly had desired to change the established rule, it would have done so. Certainly, in the absence of express words showing a contrary intention, it is safe to conclude that the word "damages," as used in the 11th section of this act, was not designed to embrace compensation for incidental injuries to realty which the highest court in the State had declared could not be recovered. The doctrine of the *Omberg* case was reaffirmed in *Roll* v. *City Council of Augusta*, 34 *Ga.* 326, decided in 1866, and recognized in *Mitchell* v. *Mayor & Council of Rome*, 49 *Ga.* 29, decided in 1873. The act of 1874, establishing a new charter for Atlanta, merely retained the provisions of the act of 1859; and though enacted after all of the foregoing decisions had been rendered, made no attempt to broaden or enlarge the settled meaning of the word "damages" as therein employed. Again, in *City of Atlanta* v. *Green*, 67 *Ga.* 386, and *Campbell* v. *Metropolitan Street Railroad Co.*, 82 *Ga.* 325, this court approved as correct the doctrine of the cases above cited upon this question. In the *Green* case it was announced that the rule had been changed by that paragraph of the present constitution which declares, not only that private property shall not be taken, but also that it shall not be damaged, for public purposes, without compensation. But we are now striving to ascertain the meaning of the word "damages" as employed in acts passed before the constitution of 1877, and the conclusion seems irresistible that the application of this term was confined to cases in which there was an actual taking and appropriation of property itself.

The act of December 27, 1890 (Acts of 1890-91, p. 446), adds nothing to the strength of the plaintiff's position. Its title declares it to be amendatory of the charter of 1874 and the acts amending the same, "so as to provide for a more perfect method of condemning private property for opening or widening streets, lanes and alleys, in said city." This title clearly indicates that the purpose of the act is to deal exclusively with property which is to be condemned and taken, for this, as previously observed, is what must be done when a street is to be opened or widened upon land belonging to a citizen. It is true that in its body the act retains the words "otherwise change," which appear in the old acts, but they cannot be held to extend or enlarge the scope of what is embraced in the title.

We do not, of course, wish to be understood as laying down what would now be justly regarded as an utterly absurd proposition, viz: that a citizen is not, under the constitution of 1877, entitled to compensation when his property is damaged for public purposes, even when none of it is taken. We are simply holding that there was not, when the Forsyth street bridge was built, anything in the charter of Atlanta requiring that the damages, if any, should be ascertained by assessment before the work was done. The City of Atlanta, as above remarked, was proceeding under express legislative authority (see Acts 1890-91, vol. 2, p. 455) to build the Forsyth street bridge, and we have shown that there was no law requiring the city to give notice to any abutting property owner of its intention to do so, or take any steps for the appointment of appraisers to assess the incidental damages which might arise. It did not, therefore, by omitting to do these things, become a wrong-doer or a trespasser, and consequently the rule applicable to trespassers, which was announced at the beginning of this discussion, does not apply.

2. There is little difficulty in holding that Mrs. Hurt was not entitled to damages upon the idea that the city took a

portion of her property. The "taking" referred to in the constitutional paragraph under consideration means a physical, tangible appropriation of the property of another. The cases above cited all bear out this idea; indeed, they are inconsistent with any other. If rendering ingress to and egress from a lot or building is "taking" property from the owner, there is, in this respect, no substantial difference between the former constitutions of this State and the present one, and much learning and research have been vainly expended in determining the question dealt with in these cases and the authorities which they cite, for if a "damaging" of this kind is the same thing as a "taking," there was no occasion for so much discussion of the question of liability. Beyond doubt, an easement is, in a sense, "property;" and there are, perhaps, cases where the appropriation of a mere easement,—such, for instance, as a railroad right of way,—might be held to be a taking of property. Even then it would be a nice question as to whether such an appropriation should not more properly be termed a "damaging" than a "taking." In either event, compensation would have to be paid, and that is the material thing in such a matter. In the present case, however, treating Mrs. Hurt's right of ingress and egress to her building as an easement, the destruction or impairment of the same cannot, we are satisfied, be regarded as a taking of her property within the meaning of the constitution. "There is a broad distinction between cases of this character and those in which possession of, and dominion over, private property is taken for public use." *Moore* v. *City of Atlanta,* 70 Ga. 612.

3. In the next place, was her property "damaged" for public purposes? In the sense that her building as it stood after the completion of the bridge was less useful and less valuable for rent, there certainly was damage to her real estate; but treating the realty as a whole, was she, under all the facts and circumstances, really injured? We think it clear that she was not. The evidence showed that this great

public improvement, without reference to other causes, had greatly increased the market value of her premises. The particulars as to this matter have already been stated, and need not be here repeated. The city, not being a trespasser, was entitled to set off enhancement in market value against the damages it actually occasioned; and as, upon so doing, it plainly appeared that the plaintiff was benefited more than she was damaged, she sustained no injury of which she can legally complain. How could it be said that she was justly entitled to compensation when, on the whole, she has been really benefited and left in a better position than before? The following cases conclusively show that the "market value" test is the proper one to apply, and also establish the city's right to set off increase of value resulting from the improvement against the damages proved: *City of Atlanta* v. *Green*, supra; *Moore* v. *City of Atlanta*, supra; *Smith* v. *Floyd Co.*, 85 *Ga.* 420, 425, citing Chicago *v.* *Taylor*, 125 U. S. 161; *Davis* v. *E. T., V. & Ga. Ry. Co.*, supra; *Streyer* v. *G. S. & F. R. Co.*, 90 *Ga.* 56. In the case last cited it was, we think, properly held that, in determining the question of damages, the easement of access to a building from a street was not to be valued separately. It is difficult to conceive how such an easement could be valued at all, without reference to the realty to which it appertained, the purposes for which such realty was used, its value for rent, and its market value as an entire estate. This decision, upon a review thereof, is affirmed.

The case in hand is readily distinguishable from that of *Pause* v. *City of Atlanta*, 98 *Ga.* 92, which arose out of the erection of this same bridge. There, the plaintiff was a leaseholder, and the damage was to her estate as such. Not being the owner of the fee, the enhancement of its market value was not involved.

4, 5. The ruling announced in the 4th head-note requires no elaboration; and the foregoing, we think, establishes the

conclusion that the verdict in the city's favor was right and ought not to be disturbed.

*Judgment affirmed. All the Justices concurring.*