## ATLANTIC AND BIRMINGHAM RAILWAY COMPANY *v.* McKNIGHT.

1. When a railway company locates its line along a public street, and changes the grade of the street for the purpose of facilitating the construction of its road and the operation of trains thereon, it is liable, in

an action, to the owner of property abutting upon the street, for any actual damages directly resulting from the change of the grade of the street; and this is true notwithstanding the fact that the change of the grade is made with the consent and under the authority of the municipality in which the street is located, it not appearing that the change in grade is solely a part of a general plan of the municipality in grading its streets.

2. The construction and operation of a railway in a public street is a physical invasion of the easement of access of abutting-land owners, and is a damage to the property, within the meaning of the constitutional provision which declares that private property shall not be taken or damaged for public use without just compensation being first paid.

3. In the trial of a case brought to recover for a damage of the character above indicated, evidence as to smoke, noise, dust, cinders, and the like may be considered by the jury, not as independent elements of damage, but in determining the value of the property, after the railroad has been constructed and is in operation.

4. This case is controlled by the decision in *South Carolina R. Co.* v. *Steiner*, 44 *Ga.* 546, and *Campbell* v. *Metropolitan R. Co.*, 82 *Ga.* 320, and is to be distinguished from the cases of *Austin* v. *Terminal Ry. Co.*, 108 *Ga.* 671, and *Ga. R. Co.* v. *Maddox*, 116 *Ga.* 64, for the reason that in the two cases last cited there was no physical invasion of the property or any right appurtenant thereto.

5. If, in an action of the character above indicated, the evidence shows that noise, smoke, dust, cinders, and the like have damaged the property,— that is, its value is depreciated thereby,—these elements of damage can be considered by the jury in arriving at the amount of the recovery; but if they amount merely to an inconvenience or a discomfort to the occupants, they are not elements of damage, and are not to be considered in arriving at the amount of their verdict. In such cases the plaintiff must recover because his property is damaged, not for the reason that the occupant is inconvenienced.

6. The evidence authorized the verdict, and no sufficient reason has been shown for reversing the judgment.

Submitted March 2,—Decided May 11, 1906.

Action for damages. Before Judge Littlejohn. Dooly superior court. May 15, 1905.

McKnight sued the Atlantic & Birmingham Railway Co., alleging that he was the owner of a lot in the city of Cordele, which was located on the corner of 10th street and 7th avenue, the former being on the west side of the lot, and the latter on the north side. Upon this lot was a building, the lower story of which was used for storehouses, the upper story being used as a hotel. In 1902 the railway company constructed its line of road along 10th avenue, and has since that time been operating its trains along that street. The continuous operation of freight and passenger trains so near

the property, on account of the smoke, noise, and dust is a nuisance, and has damaged the property to the extent of $1,000. While the railway was being constructed the defendant lowered the grade of 10th avenue three feet, removing and excavating the earth in the street adjacent to the property, rendering the same "unapproachable and inconvenient," and, as a result, damaging the property in the sum of $1,000. The railway company also entered 7th street, and excavated and removed the earth from the street, adjacent to the property, lowering the grade two feet, thereby rendering the property "unapproachable and inconvenient" and damaging the same in the sum of $1,000. The grading of the street and avenue, and the continuous operation of the trains of the railway company along the street, have damaged the property in the sum of $3,000, in that the rental and market value has been decreased by that sum. The value of real property in the city of Cordele of like nature to that owned by plaintiff has, since the construction of the railway, materially increased, but, on account of the construction and maintenance of the railway in the street adjacent to plaintiff's property, his property has diminished in value. Petitioner was forced to build a retaining wall at a cost of $120. To the petition the defendant filed a demurrer, but, so far as appears from the record, no ruling was ever made thereon, and it seems to have been abandoned. The defendant filed an answer, in which it denied all of the allegations of the petition in reference to the damages claimed, and denied any liability whatever to the plaintiff. One paragraph of the answer contains a special plea alleging, that the defendant constructed its railroad in and through the city of Cordele and along 10th avenue and across 7th street, "under full and free consent and ample authority so to do, and that all of the work of grading, done along said avenue and upon said street, was by consent and under proper authority to do the same." The trial resulted in a verdict in favor of the plaintiff for $500. The defendant filed a motion for a new trial, upon the general grounds, which was subsequently amended by five additional grounds, one of them complaining of the admission of certain evidence, and the remaining four complaining that the verdict was contrary to specified portions of the charge of the court. The motion was overruled, and the defendant excepted.

*Rosser & Brandon, B. J. Conyers, J. L. Sweat,* and *Crum & Jones,* for plaintiff in error. *Hill & Royal,* contra.

.COBB, P. J. (After stating the foregoing facts.) The right of the railway to construct and operate the road longitudinally upon the street is not questioned. That the railway is in the street lawfully is conceded. There was some evidence from which the jury might possibly find that the grading upon both the avenue and the street was done by the railway company; but it is not necessary to determine whether this evidence was sufficient to authorize such a finding, for the reason that the answer of the railway company, construed most strongly against it, in effect admits that it did the grading, and seeks to justify its act in doing the work by pleading the authority of the city to do the work. If the grading of these streets was simply a part of a general plan devised by the city authorities to grade the streets, independent of the use of the same by the railway, and the railway company was in effect the employee or contractor of the city to do this work, it may be that there would be no right of action in the plaintiff against the railway company, but he would be remitted to his action against the city. However, if the change in the grade of the streets was for the benefit and convenience of the railway company, and was done by it under the authority of the city to facilitate the construction of its railroad, and not as a part of a general plan of street grading, the plaintiff would have his action against either the city or the railway company for any damages to his property that resulted from the grading. If a city grades its streets to make them more useful to the public, and private property is damaged as a result of this improvement, the owner is entitled to his action against the city. If a railway company find it necessary to change the grade of a street in order to facilitate the construction of its road, and the city authorities consent that the change may be made, the owner of property damaged by the act of the railway company is entitled to his action against the company. How far a recovery against a railway company would, under such circumstances, affect his right to claim compensation against the city need not be determined in the present case. When the evidence is taken as a whole, it is sufficient to authorize a finding that the change in the grade of the street, although beneficial to the public without reference to the rights of the railway company, also inured to the benefit of the

railway company; and it having received this benefit resulting from a change in the grade, it must compensate those whose property was damaged by the grading done for its benefit.

2-4. In *Sleiner's* case (decided in 1871), 44 *Ga.* 546, it was held, while the use of a public street might be lawfully granted to a railroad company to lay its track and operate its trains thereon, that if this use of the street inflicts injury upon those who own property on the street, by throwing smoke through the buildings along the street, or by shaking or breaking the plastering of buildings, or by the noise resulting from the operation of trains, the legislative right to run over the street does not make such acts harmless, and the injury inflicted is not damnum absque injuria; but that the right of recovery is limited to actual damages, and, on a trial, any damages shown to have resulted from a depreciation in the value of the property, not only from obstruction to access, but from smoke, noise, etc., "traceable as effect from cause," would be recoverable, but that mere inconvenience to the occupants of the building, resulting from the lawful occupation of the street by the railroad, or damages which were of a fanciful or speculative nature, or sentimental in character, would not be the subject of recovery. In this case the railway was laid along a street in the city of Augusta, which was sixty-five feet wide. The track was five feet in width, located in the center of the street, on the same level as the street, and offered no obstruction to the crossing of the street, at any point, beyond a slight jolting of vehicles. The ruling was concurred in by two Judges only, Judge McCay dissenting. An opinion was filed by each of the Judges. It is to be noted that this case was decided before the constitution of 1877, at a time when damages could not be recovered for the mere damaging of private property for public use when there had been no taking of the property. The right of the plaintiff to recover was based, by the Chief Justice and Judge Warner, upon that provision of the code now contained in section 3874, which is in the following language: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a cause of action." They each seem to have concurred in the view that so far as the effect upon the property rights of abutting-land owners was concerned, it was really, so far as the actual damage was concerned, a taking of their prop-

erty, for which compensation must be made. The dissenting opinion of Judge McCay seems to be based largely upon the fact that the fee to the street was in the public and the abutting-land owners had no property right therein. He used this language: "It can not, therefore, be said that there is here any taking of private property for public use. The property taken already belongs, and always has belonged, to the public. The real and only question here is, has the public the right to use a street, the property, the fee of which is in itself, but which has been dedicated to the use of the citizens as a street, for the purpose of running a railroad through it." See also, in this connection, the remarks of Judge McCay at the conclusion of the opinion in *Atlantic & Gulf R. Co.* v. *Mann,* 43 *Ga.* 202.

If the construction and operation of a railroad in a street, the fee of which is not in the owners of adjacent property, which, so far as any physical effect upon the property abutting on the street was concerned, simply interfered with the right of approach to the same, was a taking of private property for public use within the meaning of a constitution which prohibited merely the taking of private property for such public use without just compensation, certainly such a transaction would be a damaging of private property within the meaning of a constitutional provision requiring compensation to be made not only when private property is taken, but when it is damaged for public use. Such was the view of this court in *Campbell* v. *Railroad Co.,* 82 *Ga.* 320, a case originating after the adoption of the present constitution. It was there held that the construction and operation of a horse railway in the public streets of a city by the authority of the legislature and the consent of the city government, whether it be a new burden upon the street or not, entitled an owner of adjacent property to recover for any special damage to his property resulting from the construction and operation of the railway. It was also held that if in the operation of a railway in a street there was noise, smoke dust, cinders, or the like, which were shown by the evidence to have depreciated the market value of the property, these elements should be considered in arriving at the amount of the recovery, but if, under the evidence, they merely inconvenienced or caused discomfort to the occupants of the property, they are not elements of damage and should not be so considered. The plaintiff in that

case did not own the fee in the street. The basis of his right of action was that the right of approach to his property was interfered with by the construction and operation of the railway. In the *Steiner* case the railway was twenty-five or more feet from the property. In the *Campbell* case the railway was only a few inches from the curbstone of the sidewalk. But a right of approach was in each instance interfered with, and this was a physical invasion of a right appurtenant to the property lying on the street, the distance from the property to the railway making only a difference in the degree of injury. See also, in this connection, *Pause* v. *Atlanta*, 98 *Ga.* 92. In *Austin* v. *Augusta Terminal Co.*, 108 *Ga.* 671, the property affected by the operation of the railway did not abut upon the street along which the railway was constructed. The construction and operation of the railway was not, under such circumstances, an invasion of the property itself, or of any right appurtenant thereto. The decision in the *Steiner* case is therein recognized as authority, and nothing is said in that case to at all weaken its force. On the contrary, Mr. Chief Justice Simmons (p. 682) says: "In our own case of *South Carolina R. R.* v. *Steiner*, 44 *Ga.* 546, the tracks were in the street immediately in front of the plaintiff's residence, physically invading his right of way, and thereby giving him a cause of action. When there has been this physical interference, there is a 'damage' in connection with the 'taking' of private property consisting of an easement or right of way, and the plaintiff, being thus damaged, is allowed to show all of the elements of that damage. The effect of smoke and noise are considered, not as independent elements of damage, but as tending to prove the value of the property after the railroad has thus taken or damaged the property or some right appurtenant to the property." The *Pause* and *Campbell* cases are here also recognized as binding authority. See p. 679. The case of *Georgia R. Co.* v. *Maddox*, 116 *Ga.* 64, is similar to the *Austin* case, in that the parties complaining were not owners of property abutting upon a street on which a railway was being operated. The claim for damages in that case was by persons residing near a terminal yard of the railway company, and no property right of the persons complaining was invaded, as was true in the cases of *Steiner, Campbell,* and *Pause.* It is also to be noted that in the *Maddox* case the ground upon which the injunction was sued out was that the yard

and the manner in which it was conducted was a nuisance, and the damages resulting therefrom were special and irreparable. In the present case the railway was forty-two feet from the property of the plaintiff, but it was in the adjacent street, and the mere presence of the railway interfered to some extent, slight though it may be, with the right of approach, the amount of interference being dependent, of course, to some extent upon the number of trains which would pass during each twenty-four hours. The case is clearly within the principles laid down in the *Steiner* and *Campbell* cases; and the distinction between it and the *Austin* and *Maddox* cases is manifest.

5. The entire charge of the court does not appear in the record, but, from an extract as contained in the motion for a new trial, it appears that the charge distinctly instructed the jury that they were not to consider, in estimating the damages, the effect that noise, smoke, and the like might have upon the convenience of the occupants of the property, but these elements were only to be considered so far as they affected the market value of the property. The complaint is that the verdict was contrary to this charge. But there was evidence from which the jury could find that these elements affected the market value of the property, as well as the comfort and convenience of the occupants, and it is to be presumed that the jury followed the instructions of the court and considered them for that purpose for which they were authorized to consider them, and refused to consider them for any other purpose.

6. A witness was permitted to testify that there had been a general increase in the value of property in Cordele in the past three years, to the extent of fifty per cent. or more. This evidence was objected to on the ground that it was irrelevant, and error is assigned, in the motion for a new trial, upon its admission. It will be noted that the scope of the testimony embraced property in every part of Cordele. If the property in every part of this city had for some reason appreciated in value, and the property of the plaintiff had depreciated, this fact was a circumstance that the jury might properly consider in determining whether the presence of the railway in the street adjacent to the property of the plaintiff had any effect in producing the depreciation in the value of the property. It is a circumstance which would be entitled to such weight as the jury saw fit to give it. The evidence authorized the verdict, and no sufficient reason has been shown for reversing the judgment.

*Judgment affirmed. All the Justices concur.*