## WARD *v.* GEORGIA TERMINAL COMPANY.

The alteration and change of grade of a portion of a street in a city, permitted and sanctioned by lawful authority, whereby the value of land abutting on another part of the street, beyond a cross street, is lessened, is not a ground of action, where the landowner has the same communication to other parts of the city through intersecting streets, though with less convenience over the street which was altered.

FEBRUARY 10, 1915.

Equitable petition. Before Judge Bell. Fulton superior court. November 6, 1913.

*Westmoreland Brothers* and *Etheridge & Etheridge,* for plaintiff.
*Colquitt & Conyers,* for defendant.

EVANS, P. J.　The Georgia Terminal Company, the successor of the Gate City Terminal Company, acquired an area of territory between Foundry and West Hunter Streets in the City of Atlanta. Mangum Street traversed this territory, extending northward beyond Foundry Street and southward beyond West Hunter Street. The company acquired the property on both sides of Mangum Street between Foundry and West Hunter Streets. With a view of erecting terminals and railroad-yard facilities upon their property, they applied to the municipality of Atlanta for permission to change Mangum Street between West Hunter and Foundry Streets, so that its course would run in the main along Jones alley. The change in the street and the construction of the railroad terminals necessitated excavations of varying depths, reaching about thirty feet at the street immediately north of West Hunter Street. Connection was made with the original Mangum Street by broadening West Hunter Street and grading the addition so as to reach, on a declivity, the point where Mangum Street touches West Hunter Street. The plan of the company, showing the alterations in location and grade of Mangum Street, and the other changes in that vicinity, was fully set out in a petition to the mayor and general council of Atlanta, and approved by the municipality. The General Assembly of Georgia sanctioned the action of the mayor and general council. Acts 1907, p. 408. The terminal company was proceeding to make the alteration in Mangum Street as thus authorized, when A. C. Ward, alleging that he was the owner of certain property abutting on Mangum Street, fifty-two and one half feet south of West Hunter Street, sought to enjoin the terminal company from further prosecution of the work of excavation and alteration in Mangum Street between West Hunter and Foundry Streets. The court denied the injunction, and dissolved the restraining order, upon the defendant's giving bond in the sum of $5,000, payable to the plaintiff, to indemnify him for any damage which might accrue to him from the closing of Mangum Street, as set forth in his petition. The court further provided that the company should obligate itself not to oppose any amendment offered by the plaintiff praying for damages, and that any judgment which might be obtained should be entered upon the bond as in

case of appeal. The bond was given, and the work was completed by the terminal company. Thereafter the plaintiff amended his petition, alleging that the change in the grade of Mangum Street rendered ingress and egress to his property from the north end of Mangum Street more difficult and depreciated the market value of his property in the sum of $5,000. The case came on to be heard, and upon the conclusion of the plaintiff's evidence a nonsuit was granted.

There is no suggestion that the change in the grade and course of Mangum Street was not legally authorized. No complaint is made on that score. The plaintiff's lot is situated in another block, more than fifty feet from that part of Mangum Street where the change in grade and course was made. So that no question of a public nuisance is raised; and if the plaintiff can recover at all, it must be under that provision of the constitution which prohibits private property from being taken or damaged without just compensation. If the plaintiff's property abutted on that portion of the street which was vacated, and his means of access to his property was interfered with, he would be entitled to remuneration for the damages sustained by the interference with his right of access. *Atlantic and Birmingham Railway Company* v. *McKnight,* 125 *Ga.* 328 (54 S. E. 148). Or if the effect of the changing of the grade of Mangum Street was to substantially convert that portion of Mangum Street upon which the plaintiff's property abuts into a cul-de-sac, he could maintain an action for his damages. But this is not the case. The plaintiff's property is separated from the block where the change in the grade of the street was made, by a cross-street that gives him the same access to his property into different parts of the city that he had before, in addition to his outlet through the new street where the grade was changed; and also there is no interference with Mangum Street south of the plaintiff's property. In a situation like the plaintiff's, the rule is thus deduced by Mr. Elliott, from a large number of cases collated in the notes to 2 Roads and Streets, § 1181: "Owners of land abutting upon neighboring streets, or upon other parts of the same street, at least when beyond the next cross street, are not, however, entitled to damages, notwithstanding the value of their lands may be lessened by its vacation or discontinuance." In Smith v. City of Boston, 7 Cush. 254, it was held that the discontinuance of a part

of a street in a city by order of the mayor and aldermen, whereby the value of lands abutting on other parts of the street and on neighboring streets is lessened, is not a ground of action against the city by the owner of such lands, if still accessible by other pub-- lic streets. In that case Chief Justice Shaw said: "The petitioner had free access to all his lots, by public streets. The burden of his complaint, therefore, is, that in going to some of his houses, in some directions, he may be obliged to go somewhat further than he otherwise would. So must the inhabitant of the south end of the city, or the citizens of other towns, with their teams or carriages, who would have had a right to use the discontinued way. Upon the question of public convenience, it is the province of the mayor and aldermen, upon a balance of all considerations bearing upon it, to decide. It is not to be presumed that they will discontinue a highway once laid out, unless the considerations in favor of the discontinuance decidedly preponderate." In City of East St. Louis v. O'Flynn, 119 Ill. 200 (10 N. E. 395, 59 Am. R. 795), it was held that a "lot owner ·in a city can not maintain an action against the city for the vacation of a portion of a public street not border- ing upon his lot, and not necessary to afford him access thereto. The damage, in such case, to his lot, though in a greater degree, is of the same nature as that to all other property in the city." Like- wise, it was held in Dantzer v. Indianapolis Union Railway Com- pany, 141 Ind. 604 (39 N. E. 223, 34 L. R. A. 769, 50 Am. St. R. 343), that "depreciation in the value of property by the added in- convenience of access thereto, consequent on the vacation of a part of a street at a point some distance therefrom, is an injury not different in kind, but only in degree, from that suffered by the com- munity in general, and will not sustain a right of action for dam- ages." The same rule was followed in Enders v. Friday, 78 Neb. 510 (111 N. W. 140, 15 Ann. Cas. 685). In the note in 15. Ann. Cas. a very considerable number of authorities are collated, and the general rule is announced that property owners whose lands do not abut upon the portion of the street vacated, and access to whose property is not cut off, are not entitled to compensation be- cause of such vacation. One of the chief reasons for the doctrine is, according to Allen, J., that "to hold otherwise would be to en- courage many trivial suits; that it would discourage public im- provements if a whole neighborhood were to be allowed to recover

damages for such injuries to their estates; and that the loss is of a kind which purchasers of land must be held to have contemplated as liable to occur, and to have made allowance for it in the price which they paid." Davis *v.* Hampshire County, 153 Mass. 218 (26 N. E. 848, 11 L. R. A. 750, 752). Even in the case of an un-authorized obstruction of a street, so as to make the obstruction a public nuisance, a plaintiff can not maintain an action for damages to his property, unless it is shown that he suffers some special injury not shared by the general public. *East Tenn., Va. & Ga. Ry. Co.* v. *Boardman,* 96 *Ga.* 356 (23 S. E. 403).

In the instant case the evidence discloses that the plaintiff's access to his property from the south is not disturbed. He has the same communications to other parts of the city through West Hunter Street with the streets intersecting it, and also through Mangum Street, though the change of the grade of that street has made travel along it less convenient than it was before the change was made. The damage which he has sustained is of the same kind which is shared by the public generally. It does not differ in kind, but only in degree; and, under the overwhelming weight of authorities, he has no right of action. Whatever loss he has sustained is damnum absque injuria. There was no error in granting a nonsuit.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*