## 39569. TIFT COUNTY v. SMITH et al.

NICHOLS, Presiding Judge. 1. "Where a street upon which the plaintiff's property abuts is closed by an obstruction at one end, which, as respects the plaintiff's property, makes the street upon which it abuts a cul-de-sac, although the obstruction is neither immediately in front of the property nor touches the property, and the obstruction thereby materially diminishes and curtails the right of the owner to the free and uninterrupted use of the street in front of his property, as a means of access to and from different highways, it constitutes a special damage to the property, different in kind from that inflicted upon the public in general, and the owner has a right of action for damages therefor. *Felton v. State Highway Board,* 47 Ga. App. 615 (171 SE 198), and cases therein cited." *Dougherty County v. Pylant,* 104 Ga. App. 468 (1) (122 SE2d 117).

2. There is no difference in the rights of property owners, and the fact that the plaintiff's property is rural rather than urban in nowise affects his right to recover damages where, by the construction of a highway, the road on which the plaintiff's land abuts is converted into a cul-de-sac.

3. "The allegation that the improvement caused water to flow onto the plaintiff's property is good as against demurrer. It does not appear from the petition that the fact alleged is contrary to the laws of nature or impossible for any other reason. See *Felton Farm Co. v. Macon County,* 49 Ga. App. 239, 241 (3) (175 SE 29)." *Dougherty County v. Long,* 93 Ga. App. 212, 213 (91 SE2d 198).

4. The trial court did not err in overruling the general and special demurrers to the plaintiff's petition.

*Judgment affirmed. Felton, C. J., Carlisle, P. J., and Frankum, J., concur. Eberhardt, J., concurs specially. Bell, Jordan, Hall and Russell, JJ., dissent.*

DECIDED OCTOBER 25, 1962—REHEARING DENIED
DECEMBER 18, 1962.

*Eugene Cook,* Attorney General, *Carter Goode, Paul Miller,* Assistant Attorneys General, *Maxwell Hines,* for plaintiff in error.

*Robert R. Forrester, Seymour S. Owens,* contra.

ON MOTION FOR REHEARING.

NICHOLS, Presiding Judge. No reference is made in the defendant's motion for rehearing to any ruling in the majority opinion other than to the first two divisions which deal with the question of the plaintiffs' right to recover under the allegations of their petition because that portion of the road on which their property abutted was converted into a cul-de-sac.

The defendant seeks to draw a distinction between rural property and urban property when, while the value per front foot may vary, there is no distinction in the rights in the owners of such property. The provisions of the Constitution that the protection of person and property shall be impartial and complete (Art. I, Sec. I, Par. II; *Code Ann.* § 2-102), and that private property shall not be taken or *damaged* without just compensation being first paid (Art. I, Sec. III, Par. I; *Code Ann.* § 2-301), do not allow one rule for urban property owners and another for the owners of rural property.

If the plaintiff's property has been damaged and depreciated in value, as alleged in the petition (and the measure of damages sought in the petition is the diminution in the market value because of the creation of the cul-de-sac), he is entitled to recover damages under the law as exemplified by the decision in the case

of *Felton v. State Highway Board,* 47 Ga. App. 615, supra, which authorizes a recovery for property owners between the dead-end and the first intersecting street.

The Supreme Court in the case of *Ward v. Georgia Terminal Co.,* 143 Ga. 80, 82 (84 SE 374), recognized that the owners of land abutting a public street are entitled to damages where the portion of the street where the land abuts is converted into a cul-de-sac. Thus, in that case it was recognized that the damage suffered by such property owners is different, not in degree but in kind, from that suffered by property owners beyond the first intersecting street. While the defendant places much emphasis on a contention that the "first block" rule is an arbitrary rule used to determine when the "cul-de-sac" rule applies and when the "police power" principle applies, such is not the case, for after the "first block" or first intersecting street the property abutting such street does not abut upon a cul-de-sac. Therefore, while there has been a reference to the "first block" or first intersection, such reference refers, not as to which property owners abutting a cul-de-sac may recover but which owners of property have land abutting a cul-de-sac.

The defendant, in its motion for rehearing, refers to the inconvenience of having to travel a circuitous route as one of the alleged items of damage. Such is not the case, for the item of damage is the damage to the property and the measure in most cases would be the difference in market value before and after the cul-de-sac was created, and while the inconvenience in traveling to and from the property would definitely affect its market value such inconvenience is not the item upon which the damages are based or sought.

The defendant also relies upon another principle to support its position that in the construction of the interstate highway system more and more culs-de-sac will be created, and the burden upon the State, if recovery is permitted in such cases, would be too great. In answer to such contention it need only be said that the rights of parties are not to be determined by the possibility that other suits may be filed against the State, but by a determination of whether the plaintiff is entitled to recover under the case as laid in his petition.

The case of Warren v. Iowa State Highway Commission, 250 Iowa 473 (93 NW2d 60), relied upon by the defendant is of course not binding on this court, and while that State may allow a double standard for the rights of its citizens (one for the owners of urban property and another for the owners of rural property), it is no excuse for this State to do the same. Nor is the excuse that rural property owners are not hurt as much as urban property owners sufficient. Assuming, that two tracts of rural property are identical except for their location, one 1 mile from town and the other 20 miles from such town, can it be disputed that the tract nearer town is far more valuable? Yet, if by placing the tract nearer town on a cul-de-sac which requires the owner to travel 10 miles away from town to get to a road that leads to town is not such property then less valuable? On the other hand it is easily conceivable that urban property may be more valuable when the street upon which it abuts is turned into a cul-de-sac: e. g., residential property on a thoroughfare could be less desirable than an identical house two blocks away on a cul-de-sac. On the other hand business property (see the *Felton* case, 47 Ga. App. 615, supra), would be depreciated considerably if all motor traffic desiring to go to such business property were required to turn around in order to leave it. Each case must stand upon its own facts, and under the allegations of the petition and the established law in Georgia the petition was not subject to the general demurrers attacking the allegations with reference to the cul-de-sac.

*Rehearing denied. Felton, C. J., Carlisle, P. J., and Frankum, J., concur. Eberhardt, J., concurs specially. Bell, Jordan, Hall and Russell, JJ., dissent.*

EBERHARDT, Judge, concurring specially. While I recognize the importance of highways and highway construction to our economy and the urgency of conserving public funds in this day of spiraling costs, I can not overlook the requirement of our Constitution that "Protection to person and property . . . be *impartial* and complete." *Code Ann.* § 2-102. The demands of progress do not justify any discriminatory treatment of the citizens. *Williams v. City of LaGrange*, 213 Ga. 241, 243 (98 SE2d 617). It seems to me that we have no alternative to the

adoption of a rule that applies impartially to the man who owns property in the city and the one who has property out in the country. A "first block" or "first outlet" rule was adopted in *Felton v. State Highway Board*, 47 Ga. App. 615, supra, and, as Judge Jordan points out in his dissent, that rule has now been followed in something like a score of our sister states. This would indicate that it has great merit. I should be willing to apply a similar rule in dealing with country property. If it be deemed inimical to the public interest, then we should have in both city and country a more restrictive rule, perhaps one that would allow recovery for this element of damage only by one whose property is being taken. But so long as we adhere to the rule of *Felton* as applied to city property I think we must stay with the majority here.

As to the facts of this case, it appears that the plaintiff's land on the *cul-de-sac* lies within approximately 50 feet of the offending improvement. Thus it is as close or closer than was the damaged property in *Felton*. There is no factual basis on which the cases can be logically distinguished.

JORDAN, Judge, dissenting. The plaintiffs' petition alleged that their farm property fronting on a public road has been damaged by the construction of Interstate Route 75 in two particulars: (1) by the dead-ending of the public road on which their property was located where it intersected with the interstate road, thereby causing them to have to travel some 2 miles further to reach the nearby settlement of Eldorado to obtain groceries and mail, and (2) by the flooding of their property by rain water falling on the newly constructed road.

I agree with Division 3 of the opinion holding that the allegation of flood damage in this case is good as against the demurrer filed thereto. I dissent from the rulings in Divisions 1 and 2 of the opinion as to the plaintiffs' right to damages for the alleged decrease in property value based on the inconvenience to them resulting from the construction of this interstate highway.

The majority opinion in this case is based on the ruling of this court in *Felton v. State Highway Board*, 47 Ga. App. 615, supra, and other cases following that opinion. These cases are authority for the "cul-de-sac" principle which has been applied in

Georgia and other states giving property owners in municipalities *within* the first block of such obstruction the right to recover damages if the value of their property has been decreased as a result of such closing or obstruction. Beyond the first block or next intersecting street no recovery is allowed even though such property value might have been decreased, the courts in such instances applying the "police power" principle rather than the "cul-de-sac" principle. See *Ward v. Georgia Terminal Co.*, 143 Ga. 80, supra, and *Hurt v. City of Atlanta*, 100 Ga. 274 (28 SE 65).

It thus appears that the courts have used a convenient and somewhat arbitrary rule (the first block rule) in municipalities to determine where the "cul-de-sac" principle ends and the "police power" principle begins. No such arbitrary or convenient stopping place can be found in cases such as this one where a county road is involved. The next intersecting road may be ¼ of a mile or less or 10 miles or more away.

The situation presented in this case makes it clear that the decision (a two judge opinion) in the *Felton* case is based on the unsound hypothesis that property abutting a cul-de-sac created by dead ending an existing street or highway sustains damage peculiar and different in kind from the damage caused to the public in general. The *Felton* case recites that dictum in the *Ward* case, supra, is to the effect that "the owner of a lot abutting upon a street has the right to recover for the depreciation in the value of his lot caused by the street upon which his lot abuts being converted into a cul-de-sac." However, the dictum referred to says, "Or if the effect of the changing of the grade of Mangum Street was to substantially convert that portion of Mangum Street upon which the plaintiff's property abuts into a cul-de-sac, he could maintain an action for his damages." *Ward v. Georgia Terminal Co.*, 143 Ga. 80, 82, supra. Clearly, the cul-de-sac referred to in the *Ward* case was one resulting from the changing of the grade of the street in front of the property, thereby interfering with the access as it formerly existed, rather than the type cul-de-sac resulting from the dead-ending of a street or road some distance from the plaintiff's property such as existed in the *Felton* case and such as we have in this case.

The owner of property abutting a highway has rights peculiar to his property as well as rights as a member of the general public. When the highway affords the means of egress and ingress to his property, and when obstruction of the highway completely cuts off his rights of egress and ingress, rights peculiar to the property are destroyed and there is a special damage to his property. His right to the use of the highway for traveling from place to place, on the other hand, is a right he shares with the public generally. An obstruction of the highway that merely makes it less convenient for him to travel from place to place or causing circuity of access, is the same inconvenience as that which occurs to other members of the public, though the inconvenience to the property nearer the obstruction may be greater in degree. Where "the street immediately in front of an abutter's property is not affected but there is an obstruction to passage along the street at another point or another part of the street is discontinued, the weight of authority, even under the 'damage' clause, is that the abutter is not entitled to compensation if his land may still be reached from another direction." Julius L. Sackman, Access—A Problem in Liability, Southwestern Legal Foundation, Institute on Eminent Domain, 1962, p. 9.

The true rule in determining if there has been a damage peculiar and special to the property involved should be whether or not there has been a direct interference with or a material deprivation of access to such property. Such a concept is more realistic and practical than the hypothesis of the *Felton* case, which we feel should be abandoned.

The particular question here involved has not been adjudicated in Georgia and in many other states, but the question will soon be forthcoming in all the states as the construction of the interstate limited access highways progresses. One of the first states to be confronted with this question was Iowa, which follows the "cul-de-sac" principle as to city streets, as does Georgia, in the case of Warren v. Iowa State Highway Commission, 250 Iowa 473, supra. In that case the plaintiff conducted farming operations upon two separate tracts of land on opposite sides of the same county road, but some half-mile or so apart. The new interstate highway bisected and dead-ended this county road,

thus preventing direct access from one of plaintiff's tracts to the other. Whereas prior to the construction of the interstate highway, the plaintiff could freely move animals and equipment from one tract to the other, a distance of a half-mile or so, after the new road was constructed she was compelled to travel some two miles further and cross a railroad twice in order to go from one tract of land to the other. In determining her right to damages in this case, the Iowa Supreme Court said at page 480:

"It is evident that the closing of the road will put her [plaintiff] to a considerable amount of inconvenience, additional effort, and expense. On the other hand, it is apparent that if intersecting secondary roads and city streets cannot be closed without payment to those who may suffer such inconvenience, who may be forced to travel by circuitous routes instead of the direct ways they formerly had, the expense to the general public will be tremendous. We are in the process of co-operating with the Federal Government in building several wide highways across the State, both north and south and east and west. They are a part of the National Interstate and Defense Highway system. They will inevitably cross many secondary roads and city and town streets, and numerous users of these latter ways will find themselves shut off, in part at least, from their accustomed convenient and direct means of going from place to place. . . The problem is of great importance both to the public in its need for efficient highways and to those who may be affected by their construction.

". . . Upon careful analysis of the cases the true rule appears with reasonable certainty. It is that one whose right of access from his property to an abutting highway is cut off or substantially interfered with by the vacation or closing of the road has a special property which entitles him to damages. But if his access is not so terminated or obstructed, if he has the same access to the highway as he did before the closing, his damage is not special, but is of the same kind, although it may be greater in degree, as that of the general public, and he has lost no property right for which he is entitled to compensation." See also Jones Beach Boulevard Estate, Inc. v. Moses, 268 N.Y. 362 (197 NE 313), where it was held that an abutter

on a road converted into a parkway, causing him to travel five miles to his right before he could find a turn around to go left, was not injured in such manner as to entitle him to damages, and also Muse v. Mississippi State Highway Commission, 233 Miss. 694 (103 S2d 839).

It must be borne in mind in the instant case that the allegations do not show that the right of access from plaintiffs' property to the public road on which it abuts has been cut off or interfered with, distinguishing it from *Clayton County v. Billups Eastern Petroleum Co.*, 104 Ga. App. 778 (123 SE2d 187), and similar cases. Such access is the same as it was before the construction of the new highway, plaintiffs' property not abutting on the portion of the road which was closed. That Eldorado and other towns can be reached by other routes open to travel is not disputed. It is the matter of convenience which is the real gist of the complaint. Therefore, under the theory set forth above, no special damage has been incurred which would support a recovery, the plaintiffs being in the same position as the general public and others who may live on the same road. They are in the same legal position as residents or owners of businesses on a street or roadway converted to one way traffic, a one-way traffic designation having the same effect as a cul-de-sac for persons desiring to travel in the opposite direction.

"This review of the authorities establishes that they are practically unanimous upon the following points: . . . (2) that damages resulting from diversion of travel, and inconvenience from having to go by a more circuitous route, are not special, but general, damages, and not recoverable. . ." Cram v. City of Laconia, 71 N.H. 41 (51 A 635).

Highways today are an absolute necessity to the development of our economy. More and better highways are demanded to serve the public needs and the ever increasing number of vehicles. Planners must be free to design limited access highways, parkways, one-way traffic streets, and other methods designed for the orderly flow of traffic and the safety of individuals using such facilities. While such construction and planning will necessarily cause inconveniences and circuity of travel to some individuals and disadvantages to some businesses, there must

be a point at which this must yield to the public interest. The General Assembly of Georgia has expressly made a declaration of such public necessity by the enactment of limited access highway legislation in 1955, declaring that "Limited-access highways may be so designed as to regulate, restrict or prohibit access thereto so as to best serve the traffic for which such facility is intended," and providing that "The State Highway Department of Georgia, or the highway authorities of counties or municipalities shall have authority to provide for the elimination of intersections at grade of limited-access highways with existing State, county or municipal roads or streets or railroad rights-of-way by grade separation or local service roads or by *closing* off such roads or streets at the right-of-way boundary line of such limited-access highway." *Code* §§ 95-1703a, 95-1705a.

If the claim of plaintiffs under these allegations is allowed, where is the stopping point? Shall all property owners living on this road have a similar claim, differing only in degree? Would this be true whether the road be one mile or 20 miles long? If inconvenience and circuity of travel to a designated point are relied upon to support the claim, should the State be allowed to offset this by showing the benefits accruing to the plaintiffs and the general public? For instance, in this case the State might be able to show that the plaintiffs will make several round trips per month to Atlanta over this Interstate Highway. By showing a reduced mileage and non-stop driving, the savings to the plaintiffs on each trip would be substantial and readily apparent. Such *benefits* accruing to the plaintiffs would be no more speculative, remote or incapable of proof than the alleged *damages* complained of in this petition. These and many more questions suggest the legal quagmire which would result from giving legal status to such alleged damages. If this principle is extended to its logical limits almost every member of the public could claim damages on the theory that the convenience of the highway was reduced by closing any means of access.

As stated by Justice Lumpkin in *East Tenn. V. & G. R. Co. v. Boardman*, 96 Ga. 356, 359 (23 SE 403), "To maintain an action of this kind would simply be to turn the jury loose, without chart or compass, into a broad ocean of conjecture, which

150

would render them entirely unable to reach any just or satisfactory result."

This leads us to the conclusion that since no property of the plaintiffs was taken, since their right of access to the road on which their property abutted was not interfered with, and since the special damages claimed are suffered by the public generally and are not peculiar to them alone, they are not entitled to the relief sought, except such damage as might have resulted from the alleged flooding situation. The trial court therefore should have sustained the demurrer to that part of the petition alleging diminution of the value of plaintiffs' property based on the inconvenience and circuity of travel resulting from the construction.

I am authorized to state that Bell, Hall and Russell, JJ., concur in this dissent.