## 21961. TIFT COUNTY v. SMITH et al.

ARGUED APRIL 8, 1963—DECIDED MAY 31, 1963.

*Eugene Cook, Attorney General, Carter Goode, Paul Miller, Assistant Attorneys General, Maxwell Hines,* for plaintiff in error.

*Robert R. Forrester, Seymour S. Owens,* contra.

GRICE, Justice. We determine whether, under the facts here, property owners are entitled to compensation because of the dead-ending by the county of a public road upon which their property abuts.

This review arises from a suit by Jesse C. Smith and Annie Lou Willis Smith against Tift County, in the Superior Court of that county, claiming damages for such dead-end obstruction; the trial court's overruling of the county's demurrers to their petition; the Court of Appeals' affirmance of that ruling; and our grant of the county's application for writ of certiorari.

The property owners' petition made these material allegations: that they are owners of a farm on the Old John Williams Public Road in Tift County; that the State Highway Department constructed a State-aid road, interstate limited access type, east of their farm; that the west boundary of this newly constructed highway is approximately ten feet east of the northeast corner of their property and approximately fifty feet east of the southeast corner of their property; that in constructing the new highway, the Old John Williams Road was closed by dead-ending into this new highway at a point some 50 feet from the northeast corner of their property; that this closing resulted in their being able to proceed only to the west upon entering the Old John Williams Road from their property, instead of to both the west and the east as before such closing; that by the dead-ending of the Old John Williams Road their ingress and egress from the east to Eldorado has been increased from seven-twentieths of a mile to three and one-tenth miles; and that the only access remaining to Eldorado where they obtain their mail and purchase their groceries is now in a westerly direction, over hilly dirt roads which are wet and slippery during rainy weather. As a result of such dead-end obstruction they have suffered injury and damage and diminution of the value of their property in an extent peculiar to their property and such damage is different in kind from that inflicted upon the general public.

To that petition the county interposed general and special

demurrers. The county's position was that the plaintiffs did not allege a taking or damaging compensable under our State Constitution. These demurrers were overruled by the trial judge.

The Court of Appeals held that the petition set forth a cause of action for such taking and damaging upon the theory that the construction of the new highway resulted in converting the old road, on which the plaintiffs' property fronts, into a cul-de-sac. Four judges joined in an opinion and a fifth entered a special concurrence, while the other four dissented by their opinion.

We give no consideration to the phase of the case dealing with allegations as to the increase of flow of water onto plaintiffs' farm since the assignments of error on the judgment of the Court of Appeals do not include that phase. In its assignment of error the defendant county contends that the Court of Appeals erred in applying the cul-de-sac principle to the obstruction of a rural road and also in holding that the plaintiffs' damage from obstruction of the road was different in kind from that suffered by the general public.

The basis of the county's assignments of error is that the plaintiffs have not alleged a taking or damaging of private property compensable under our State Constitution, Art. I, Sec. III, Par. I (*Code Ann.* § 2-301). Plaintiffs insist that they have.

This divergence of contentions focuses attention on the factual situation here.

None of the plaintiffs' land was actually taken as the result of the construction of the new highway or the dead-ending of the old road. The plaintiffs made no claim on that score.

As to whether their property has been damaged by the dead-ending obstruction of the old road, of which they complain, their allegations show no physical damage to the property itself. Also, they now have the same ingress and egress as before to their entire 2,150 foot frontage along the old road. In this respect the situation at bar differs from those in cases relied upon by the plaintiffs. In each of them the obstruction was so close to the property that it materially interfered with the owner's access to the street upon which his property abutted. *South Carolina R. Co. v. Steiner,* 44 Ga. 546; *Campbell v. Metropolitan*

*Street R. Co.,* 82 Ga. 320 (9 SE 1078); *Atlantic & Birmingham R. Co. v. McKnight,* 125 Ga. 328 (54 SE 148); *Louisville & Nashville R. Co. v. West End Heights Land Co.,* 135 Ga. 419 (69 SE 564). In the latter case, the obstruction was not of a public road or street.

The complaint here is based upon access, *not* to the *road* upon which their property abuts, but to a particular place, Eldorado. The plaintiffs claim that dead-ending of the old road made access to Eldorado inconvenient because of increased distance over bad roads, and that this situation has lessened the value of their property.

Relying upon the cul-de-sac principle, plaintiffs sought to establish these allegations as a taking or damaging for which compensation must be paid under our State Constitution, Art. I, Sec. III, Par. I (*Code Ann.* § 2-301).

The cul-de-sac principle was recognized in this State by this court in *Ward v. Georgia Terminal Co.,* 143 Ga. 80 (84 SE 374) and was first applied to authorize recovery by the Court of Appeals in *Felton v. State Hwy. Bd.,* 47 Ga. App. 615 (171 SE 198).

In the *Ward* case, 143 Ga. 80, supra, decided in 1914 by five justices, the dead-end was located beyond an intersecting street from the plaintiff's property, that is, not in the same block, and recovery was denied. This decision was soon followed, in a similar factual situation, in *Georgia Terminal Co. v. Temple Baptist Church,* 144 Ga. 791 (87 SE 1023), also by five justices. In the *Felton* case, 47 Ga. App. 615, supra, decided in 1933 by only two judges, the dead-end was at the far end but within the same block as the plaintiff's property, and recovery was permitted for diminution of the value of such property. The ruling in the *Felton* case has been followed several times by that court, each time involving a street in a municipally incorporated area. Recently this court, in *State Highway Dept. v. McClain,* 216 Ga. 1 (114 SE2d 125), had a factual situation similar in principle to that now before us, but decided the case upon a different point.

The holdings by this court in *Ward* and *Georgia Terminal Co.,* supra, and those by the Court of Appeals turn upon whether the dead-end obstruction is within the same block as the property

involved. Thus, there is no decision by this court as to whether a situation comparable to the one here constitutes a claim compensable under the constitutional provision invoked.

The gist of the plaintiffs' complaint is that the inconvenience caused by the cul-de-sac has resulted in depreciation in the value of their property. However, they do not show that this inconvenience, and resulting diminution of value, was brought about by a violation of any special right they hold as owners of this property.

It must be remembered that in this situation the rights of the plaintiffs fall into two categories: general rights, which they have in common with the public, and special rights, which they hold by virtue of their ownership of this property. In order to constitute a taking or damaging of their property, it is the special rights that must have been violated.

The only interference plaintiffs allege is inconvenience of travel on the old road. But this inconvenience they share generally with other members of the public who use this road. It is significant that they allege no interference with access from their property to the old road upon which it abuts or any other damage that is peculiar to them because of their ownership of this property. Hence, they allege no violation of their *special* rights. Thus, their damage is different from that of the general public in degree only, and not in kind. See in this connection *Campbell v. Metropolitan Street R. Co.*, 82 Ga. 320, supra; *Ward v. Georgia Terminal Co.*, 143 Ga. 80, 83-84, supra; concurring opinion in *State Highway Dept. v. McClain*, 216 Ga. 1, supra.

Under these circumstances, their inconvenience does not constitute a taking or damaging of their property under the Constitution.

In this connection the language and holding of another court dealing with a comparable factual situation seems applicable here. In Warren v. State Highway Commission, 250 Iowa 473, 480 (93 NW2d 60), the Supreme Court of Iowa said: "It is evident that the closing of the road will put [the property owner] to a considerable amount of inconvenience, additional effort, and expense. On the other hand, it is apparent that if intersecting secondary roads and city streets cannot be closed without pay-

ment to those who may suffer such inconvenience, who may be forced to travel by circuitous routes instead of the direct ways they formerly had, the expense to the general public will be tremendous. We are in the process of co-operating with the federal government in building several wide highways across the State, both north and south and east and west. They are a part of the National Interstate and Defense Highway system. They will inevitably cross many secondary roads and city and town streets, and numerous users of these latter ways will find themselves shut off, in part at least, from their accustomed convenient and direct means of going from place to place. Farmers, such as the plaintiff, will find they cannot reach their neighbors or shopping centers or, perhaps, other tracts of their own lands, without much additional travel. . . Of course, the heavy expense of compensating those who suffer some special damage is not a sufficient reason for not paying such damage. Their property may not be taken without fair compensation, if compensable damage they have. . .

". . . Upon careful analysis of the cases the true rule appears with reasonable certainty. It is that one whose right of access from his property to an abutting highway is cut off or substantially interfered with by the vacation or closing of the road has a special property which entitles him to damages. But if his access is not so terminated or obstructed, if he has the same access to the highway as he did before the closing, his damage is not special, but is of the same kind, although it may be greater in degree, as that of the general public, and he has lost no property right for which he is entitled to compensation."

That statement accords with our appraisal of the situation here.

We express our disapproval of decisions indicating or holding that compensation may be had in the absence of a taking or damaging of the property for public purposes. Therefore, we are not concerned with the fact that the plaintiffs' property is located without, rather than within, a municipally incorporated area.

What we deem controlling under the facts here is that access to the Old John Williams Road upon which the plaintiffs' property abuts was not interfered with. The fact that farther down this

road a dead-end obstruction was created so as to constitute a cul-de-sac, causing inconvenience, does not, in our view, constitute the taking or damaging of private property for a public purpose so as to require compensation.

Therefore, the judgment of the Court of Appeals in overruling the demurrers now under review is

*Reversed. All the Justices concur.*