## SEABOARD AIR-LINE RAILWAY v. McMURRAIN.

Where an owner of land executed to a railroad company, its successors and assigns, a deed "for and in consideration of running its completed road on and along his land, as well as in consideration of the sum of one dollar to him paid in hand," whereby he conveyed to the grantee "the right of way over which to pass at all times by said company, its officers and employees, in any manner they may think proper, and particularly for the purpose of establishing and running thereon a railway with the requisite number of tracks, and to this end the limit of said right of way shall extend in width so many feet on each side of the center line of roadway of said railway necessary for a single track, when completed;" and where another railroad company subsequently became the owner of the railroad and its rights, and another individual purchased from the grantor the land through which the road ran, the later owner had no cause of action against the second railroad company, based on the allegation that the soil was of a crumbly character and, unless supported, would inevitably cave or be washed into the cut which had been made in building the railroad, that

the caving or washing which had previously begun was continuing since the present company became the owner of the railroad, and that the defendant was negligent in not providing support for the soil of the plaintiff so as to prevent further damage.

Submitted July 23, 1908.—Decided February 22, 1909.

Action for damages. Before Judge Little. Chattahoochee superior court. August 26, 1907.

S. D. McMurrain brought suit for damages against the Seaboard Air-Line Railway. Among other things he alleged as follows: The right of way and tracks concerning which this case arose were originally owned, constructed, and operated by the Columbus Southern Railway Company, but are now owned and operated by the Seaboard Air-Line Railway. The right of way and tracks run in part through land lots numbers 34 and 35 in the town of Cusseta, and extend east and west. Plaintiff's residence is located on lot number 34, which is known as his home lot, and immediately east of this lot and across the street is lot number 35. These lots are owned by the plaintiff, with the exception of the defendant's right of way. In 1887 W. E. Miller, who was then the owner of the land, executed a deed to the Columbus Southern Railway Company, "for and in consideration of running its completed road on and along his·land, as well as in consideration of the sum of one dollar to him paid in hand." He conveyed to the railway company, its successors and assigns, "the right of way over which to pass at all times by said company, its officers and employees, in any manner they may think proper, and particularly for the purpose of establishing and running thereon a railway with the requisite number of tracks, and to this end the limit of said right of way shall extend in width so many feet on each .side of the. center line of roadway of said railway necessary for a single track, when completed, and to extend in length through the following described tract or tracts, situated, lying, and being in the town of Cusseta, Chattahoochee [county], to wit: a strip of land in the town of Cusseta, said State and county, necessary in the opinion of engineers for the construction of a single track over, through, and across lots No. 34, being my home place, and No. 35 lying east by my home place and across the street, said right of way to extend along the located line of the survey of said road, said right of way extending in such direction through said tract of land as the said

company by its engineers shall think best suited for the purpose of locating and establishing their work. And connected with said right of way, the said company shall have the right to cut down and remove all such trees, underwood, and other growth and timber, on each side of said road, as would by falling over, or "steading" (?) the same injure any part of the road. Together with all and singular the rights, members, and appurtenances to said strip or parcel of land belonging or anywise appertaining, and more especially the right of way over the same." The road was built in 1889, at which time Miller owned the lots above referred to. In constructing the road a deep cut, ranging in depth from nine to twelve and a half feet, extended east and west through these lots. The deepest part of the cut lay immediately in front of the plaintiff's residence. The cut as then made included in width all the lands or right of way granted to the Columbus Southern Railway Company, the original grantee. Since the construction of the road and the digging of the cut, and since it has become the property of the Seaboard Air-Line Railway, and since the above-named lots through which the road passes have been the property of the plaintiff, the defendant, in the improper and negligent exercise of its powers, has failed to erect and maintain the necessary walls for the support of the banks of the cut, thereby allowing the walls of the cut to cave away in many places into the lands belonging to the plaintiff thus damaging his lands by rendering them dangerous and unsightly.

By amendment the plaintiff further alleged in substance as follows: The Seaboard Air-Line Railway has owned and operated the railroad in question since February 20, 1902. The plaintiff has owned land lots numbers 34 and 35 since September 18, 1902. The cut when originally made included in width not more than nine feet, measured on either side from the center of the track, and as then made it included all the lands necessary for a single track as set out in the original grant of right of way. "Since [before?] the defendant company acquired title to and operated the road the sides of the cut on either side of the track had not caved in or washed or fallen away so as to include a width of more than eleven feet measured from the center of the track." But since the defendant company has owned and operated the road, the cut has so washed and caved that it now varies in width, meas-

uring from the center of the track, a distance of from fourteen to eighteen feet. The character of the cut and the nature of the soil, it being of a crumbly sort, were such as to render the caving of its walls inevitable unless supported in some way, which fact was apparent by ordinary inspection, and was well known to the defendant company. The caving and washing of the walls of the cut have occurred continuously since the defendant company has owned and operated the road; and it has not exercised reasonable diligence, in that it has failed to prevent the sides from caving and washing by erecting and maintaining walls for that purpose. Access and approach to the front of the plaintiff's property and to his residence can be had only by walking or driving vehicles along and near the cut. The caving at the side of the cut and the ditches and gullies that have washed out along the bank have made the driveway so narrow as to render it impossible for vehicles to pass. At the extreme end of the cut the bank has so caved and washed as to make it dangerous for a vehicle of any kind to be driven, because it is so narrow at this point that a vehicle would be liable to fall into the cut by the bank caving away. Because of the depth of the cut unprotected by any guard, and the crumbly character of the soil, there is danger to persons traveling in vehicles along the front of the plaintiff's property. Especially is there danger of horses or other animals attached to vehicles becoming frightened or unmanageable for any cause and running into the cut and throwing out the occupants of the vehicles. It would cost at least $750 to erect such walls along the bank of the cut, and to replace the amount of soil that has been taken away, so as to render and maintain the property in the same condition as it was prior to the alleged injury.

To the petition as amended the defendant railway company demurred on the grounds, that there was no cause of action set out; because the alleged cause of action was not plainly and fully set out as provided by statute; and because the damage resulted from the removal of lateral support in the proper exercise of grants in the deed to the right of way, and that the plaintiff acquired title subject to all results of such removal. The defendant also specially demurred to certain paragraphs of the petition. The demurrer was overruled, and the defendant excepted.

*Goetchius & Chappell,* for plaintiff in error.

LUMPKIN, J. (After stating the foregoing facts.) As a general rule owners of adjoining lands owe to each other the lateral support of the soil of each to that of the other in its natural state. Civil Code, §§ 3047, 3048. The right of lateral or subjacent support is closely connected with the right of an owner to preserve his property intact. If a wrong is done in this regard, causing damage, he may recover therefor. But there is nothing in the law which prevents an owner of land from agreeing to a removal of lateral support, or which prevents him from making such a grant as carries with it the right of removal. And a grant of that character will prevent a recovery on his part. In *Mitchell* v. *Mayor etc. of Rome*, 49 *Ga.* 19 (15 Am. R. 669), it was held, that, "If the work of grading a street, such as digging below the foundation of a wall, or under a wall and underpinning the same, be done by the consent or direction of one of the joint owners of such wall, neither of the owners can recover damages from the city council by whose laborers the work was done, on account of the falling of the wall being caused by such work." Prior to the constitution of 1877, in a case dealing with the grading of streets in a municipal corporation, it was held that where a city in grading a street dug so near the lot of the plaintiff that the earth which supported it crumbled away and the fence fell, no action could be maintained against the mayor and council for such an injury. *Mayor and Council of Rome* v. *Omberg*, 28 *Ga.* 46 (73 Am. D. 748). By the constitution of 1877 it was declared that private property can not be taken or damaged for public purposes without just and adequate compensation being first paid. Civil Code, § 5729.

In Herman *v.* Roberts, 119 N. Y. 37 (7 L. R. A. 226, 16 Am. St. R. 800, 23 N. E. 442), it was held that the conveying of a right of way gave to the grantee not only the right to an unobstructed passage over the land marked out for that purpose, but also all such rights as were incident or necessary to the enjoyment of such right of passage. In Ludlow *v.* Hudson River R. Co., 11 N. Y. (4 Hun.), 239, a landowner conveyed certain land to the railroad company "for materials, . . to have and to hold . . to the uses and purposes of said railroad, and for no other or different purpose." It was understood by the parties that a part of the land was taken as a source from which to obtain material for other portions of the railroad. By reason of the excava-

tion made for that purpose on such part, the other land of the grantor was deprived of its lateral support, and some of the earth slid into the excavation. In an action brought to recover damages, it was held that the grantor was estopped from claiming the right to her lateral support by her deed, which contemplated the use made of the land by the defendant. In the opinion James, J., said: "The purposes for which defendant desired the land were well known to the plaintiff at the time of executing her deed and were quite clearly expressed therein, and the presumption is that a price therefor was asked and given commensurate with its value and the consequences likely to follow from its excavation and use for the purposes contemplated." Boardman, J., dissented on the ground that, under á former ruling in the same case (6 Lans. 128), even if the defendant was not absolutely liable, the question of whether the work was negligently and unskillfully done was a question of fact for the jury. The majority of the court were of the opinion that "the question of negligence does not arise on this appeal, because the court instructed the jury, 'if they found the sliding down of plaintiff's land was occasioned by excavation on and the removal of the earth from the parcel sold for materials, the defendant was liable under the law;' and the same in substance was repeated and assented to by the court, in answer to repeated requests to charge by the counsel for plaintiff." In Shahan *v.* Alabama Great Southern R. Co., 115 Ala. 181 (22 So. 449, 67 Am. St. R. 20), it was held that a railroad company was liable for damages to adjoining property resulting from an overflow of water from rainfall, when it was shown that such overflow was caused by the failure of the railroad company to maintain and keep open sufficient culverts in an embankment it had built on its right of way. But it was added, "In such a case, if it is shown that there would have been no overflow upon the plaintiff's premises but for the construction of a spur-track by the defendant for the convenience of the plaintiff and at his request, there can be no recovery."

In Hortsman *v.* Covington & Lexington R. Co., 57 Ky. (8 B. Mon.) 218, it was held, that, "Where the right of way is granted to a railroad company, and it is necessary to make cuts through the ground to the proper enjoyment of the right of way, it is not incumbent on the grantee to build walls to prevent the falling of the banks." In the opinion by Stites, J., it was said: "If the

plaintiff desired to be protected from the injury, which he himself says was the inevitable result of the use of the way without walls to prevent the caving in of the adjoining land, he should have stipulated for the erection of such wall." See also Cassidy v. Old Colony R. Co., 141 Mass. 171 (5 N. E. 142).

The suit before us is not based on negligence or unskilfulness in the manner of constructing the railroad or making the cut. It is not brought against the company which built the railroad or made the cut, but against another company which has become the owner of the property and rights of the original company. The defendant, not having constructed or excavated the cut at all, is not sought to be held liable for negligence in the work. From the allegations of the petition, apparently some of the soil of the adjacent lot had sloughed off before the defendant acquired the property and rights of the original company, and before the plaintiff became the owner of the adjoining land, but the caving and washing of the walls of the cut have continued since the defendant has owned and operated the road. It was alleged that the character of the cut and the crumbly nature of the soil were such as to render the caving of its walls inevitable unless supported in some way, and that this fact was apparent by ordinary inspection. The plaintiff's assertion of right as a subsequent purchaser was based on a claim that it was the duty of the defendant to support his soil in some way, so as to prevent it from caving further. In other words, it was not a suit against the company which made the cut, for negligence in the manner in which the work was done, but against the successor in title of that company, for not creating or reconstructing some character of lateral support for the plaintiff's land, so as to prevent further caving of the soil after it became the owner of the railroad. The plaintiff bought his property after the construction of the road. This state of facts presents a stronger case in favor of the defendant than those which were involved in the cases cited above. The predecessor in title of the plaintiff executed the conveyance of the right of way to the predecessor of the defendant, "for and in consideration of running its completed road on and along his land, as well as in consideration of the sum of one dollar to him paid in hand." He thus deemed it a valuable consideration to him moving to have the road run and completed through his land. He conveyed "the right of way over which to

pass at all times by said company, its officers and employees, in any manner they may think proper, and particularly for the purpose of establishing and running thereon a railway with the requisite number of tracks, and to this end the limit of said right of way shall extend in width so many feet on each side of the center line of roadway of said railway necessary for a single track, when completed, . . said right of way extending in such direction through said tract of land as the said company by its engineers shall think best suited for the purpose of locating and establishing their work." It is matter of common knowledge that in constructing a railroad grades and cuts are necessary, where the land is not level. The then owner of the entire tract, in consideration of the benefit which he believed would arise to him or to the rest of the land from the construction and maintenance of the railroad, granted the right of way, including such things as were essential to its reasonable enjoyment. There was no provision as to erecting retaining walls or other supports to the remainder of the land. As already stated, there was no allegation in the petition that the work was improperly or negligently done. Under such a grant, no cause of action arose in favor of the successor in title of the original landowner against the successor of the original railroad merely because the soil was of such a crumbly character that it washed or caved off.

It was contended on behalf of the defendant in error that a right of action did not arise immediately upon the removal of lateral support, but from the time when damage accrued therefrom; that is, that the cause of action did not arise upon construction of the railroad, but upon the damage to the plaintiff's land. Cases involving the right of subjacent support, such as where one person owns the surface of the land and another owns the mineral rights under the surface, have given rise to conflicting judicial opinions as to when a cause of action arose in favor of the owner of the surface, and as to whether there could be more than one action where there were successive subsidences. In fact the whole subject of when a cause of action arises in certain classes of cases, and whether only one suit can be brought, or successive suits may be brought, has furnished the basis for much controversy and diversity of views. Interesting discussions of those subjects may be found in the opinions delivered in Darley Main Colliery Co. *v.* Mitchell, 11 L. R. App. Cas. 127, and the cases there cited, and in a note

to Hargreaves v. Kimberly, 26 W. Va. 787 (53 Am. R. 123). Without seeking to stir the caldron of learning on that subject, we have endeavored to show that the plaintiff in this case set forth no cause of action as against the defendant, under the facts involved. It may be mentioned that in the case of Darley Main Colliery Company and various other cases cited the action was brought against the person who removed the subjacent or lateral support, but after damage had accrued therefrom.

It was contended on behalf of the plaintiff in error that if the original railroad company had condemned a right of way through the land of the plaintiff's predecessor in title, the condemnation proceedings would have included not only payment for the land occupied, but also for damages accruing to the other land of the owner; and that this would have covered damage of the character now involved, not based on negligent construction. See Civil Code, §4675; Wood's Railway Law, §256. It was further claimed that the grant of a right of way was as effectual as if the right had been acquired by condemnation, and accordingly that the grant here involved included exemption from such damages. But as we have held that, under the grant made, the plaintiff showed no right to recover against the defendant, it is unnecessary to consider whether this contention is well founded or not.

Under what has been said above it will appear that the overruling of the demurrer to the plaintiff's declaration was erroneous.

*Judgment reversed.   All the Justices concur.*