## LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* WEST END HEIGHTS LAND COMPANY.

1. Where a land company platted and cut up a tract of land into lots and streets, and sold some of the lots, the fact that it sold two of them to a railroad company, and received the purchase-price therefor, did not make such purchase-price include damages which might result to an adjacent lot by reason of the making of a deep cut across

one of the platted streets on which the lots sold to the railroad company and another lot of the land company both abutted, if such cut was in front of a portion of the other lot of the land company or contiguous to it, and cut off one of the principal approaches to such lot, thereby damaging its market value.

(a) If otherwise entitled to recover, such recovery would not be prevented because one of the agents of the land company, who executed the deed to the railroad company, testified that it was the general understanding that the railroad was buying the two lots sold to it for some such purpose as building a railroad, and that the general understanding was that there was a railroad to be built along through that territory; or because another agent of the land company, who negotiated the sale, testified that he did not know at that time how the railroad company was going to build, or whether it was going to dig a cut at this place or not; that, from what the agent representing the railroad stated to him, he was not positive that the latter was going to utilize these lots at all; that he knew the company was going to run a railroad through there, but did not know where it was going to run, or how they were going to run it.

2. The plaintiff's petition sought to recover damages for the diminution of the market value of the lot because it was alleged that the cut across the street destroyed ingress and egress to and from the plaintiff's lot by way of an easy and direct route into the neighboring city, leaving no outlet except by a circuitous route. The charge of the court did not limit the damages recoverable to a diminution in the market value thus arising, but was calculated to lead the jury to believe that if the market value of the lot was decreased by reason of the general proximity of the railroad cut or other cause, the plaintiff could recover therefor.

3. While the word "street" is generally applied to a thoroughfare in a city, town, or village, yet, where a tract of land outside of the incorporate limits of a city was platted and divided into lots and ways of ingress and egress called streets, in a suit for damages resulting from digging a cut across such a way, and injuring the mode of ingress to and egress from the lot, it was proper to refuse a request to charge, defining a street to be a public way in a city, town, or village, and instructing the jury that if there was no street, as thus defined, lying beside the lot in question, there could be no recovery.

4. It is a substantial, not literal, agreement between the allegata and probata which the law requires. Requests to charge, the effect of which would require the plaintiff's evidence to conform to the letter of the petition as to the situation and size of a cut in a street, on account of which damages were sought, should be refused.

5. If the right of ingress to and egress from a lot by means of a direct and easy way, which the owner had a right to use without obstruction, was cut off by means of a railroad cut made across such street or way in front of the lot or contiguous thereto, thereby lessening the market value of such lot, the owner would not be prevented from recovering damages therefor because there might be another circuitous and longer way by which the lot could be reached. The possibility of access to the lot by other means would be for consideration in determining whether its

market value was diminished, and, if so, to what extent; but would not, as matter of law, prevent any recovery.

NOVEMBER 19, 1910.

Damages. Before Judge Pendleton. Fulton superior court. January 15, 1910.

*Tye, Peeples & Jordan,* for plaintiff in error.

*Etheridge & Etheridge,* contra.

LUMPKIN, J. The plaintiff, a land company, divided a tract of land, lying outside the city limits of Atlanta, into lots, made a plat thereof, and sold some of the lots. It sold two lots, which, according to the map, abutted on one of the platted streets, to a railroad company. Subsequently the land company sued the railroad company, and alleged that the defendant had, without the plaintiff's consent, dug a deep cut in front of another adjacent lot owned by the plaintiff, in and along the street on which the lots abutted, thus entirely cutting off and destroying all ingress and egress to and from the lot of the plaintiff by means of such street and a highway near by, that being the only easy and direct route into the city, and the one exclusively used by the occupants of lots in the vicinity, and thereby leaving no outlet from the lot of the plaintiff except by a circuitous way into a different highway. It was alleged that the market value of the plaintiff's lot was thus decreased. The plaintiff obtained a verdict for damages. The defendant's motion for a new trial was overruled, and it excepted.

It was contended that the agents of the land company knew that they were selling two lots to a railroad company, and that the latter expected to construct a railroad, and that payment for the lots sold included any damage which might result to the adjacent lot from a proper construction of the railroad. Reliance was placed upon the case of *Seaboard Air-Line Ry.* v. *McMurrain,* 132 *Ga.* 181 (63 S. E. 1098). The evidence does not bring the present case within the ruling there made. In that case an owner of a tract of land, for a valuable consideration, conveyed to a railway company a right of way through his land, for the purpose of building and operating a railroad.

It was further contended that if the digging of an open cut across the street or way on which the plaintiff's lot abutted amounted to a nuisance, it was public in its character, and that the plaintiff suffered no damage different from that suffered by

the general public. But this is not sound as applied to the present case. If the plaintiff's property rights were injuriously affected by the obstruction of a street or way which furnished an important avenue of approach to its lot, by digging an open railroad cut across such street or way in front of such lot or contiguous thereto, without its authority, so as to close such street or way and prevent ingress to and egress from the lot thereby, and thus depreciate its market value, the owner would not stand in the same position as the general public, but could bring an action for the damage so caused. *Coker* v. *Atlanta, Knoxville & Northern Ry. Co.,* 123 *Ga.* 483 (51 S. E. 481).

The suit was based on the interference with the principal means of ingress to and egress from the plaintiff's lot, and the consequent diminution of market value. Following the plaintiff's allegations on this subject, there was a general statement in the petition that the market value of its lot before the cut was dug was $700, but on account of the digging of the cut it has been reduced to about $200. But as no damage to the plaintiff and no wrong on the part of the defendant was alleged except in regard to the cutting off of ingress and egress by digging the cut across the street, this general statement must be taken in connection with the other allegations, and not as setting up an additional ground for damages. At one place in his charge the judge recognized this; but at several other places he dealt with the case as if the mere proximity of a railroad cut to the plaintiff's lot, if it diminished the value thereof, would furnish a basis of recovery, without limiting the plaintiff's right to damages arising from interference with the street. The defendant had a right to construct its railroad on its own property, using proper fills and cuts for that purpose. If its road upon its own right of way or property was lawfully constructed, and without negligence in the manner of doing so, the mere fact that a railroad cut might be unsightly or undesirable in the neighborhood of the plaintiff's lot would not authorize the plaintiff to recover damages on that account, in the present case. The language of the court, repeated several times, was calculated to place before the jury too broad a basis for consideration in the finding of damages. At one time he said: "Has this property been damaged by this cut; and if so, to what extent?" At another time he said: "If the property was worth less in the market im-

mediately after the cut was made than it was immediately before the cut was made, the plaintiff would be entitled to recover if the diminution in the market value was attributable to the cut made by the defendant; the plaintiff would be entitled to recover the amount of this diminution in market value." This was substantially repeated in another part of the charge. We do not hold that the amount of the verdict was without evidence to support it, but its size may have been affected by these charges of the court. Other grounds of the motion for a new trial are sufficiently covered by the headnotes. *Judgment reversed. All the Justices concur.*