[Cite as *State ex rel. King Rd. Holdings, Ltd. v. Lucas Cty. Engineer*, 2026-Ohio-2437.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

STATE OF OHIO EX. REL. KING ROAD HOLDINGS, LTD

      APPELLANT

V.

LUCAS COUNTY ENGINEER, ET AL.

      APPELLEE

COURT OF APPEALS NO. {48}L-25-00249

TRIAL COURT NO. CI0202404821

**DECISION AND JUDGMENT**

Decided: June 26, 2026

* * * * *

Kent D. Riesen, for appellant.

Julia R. Bates, Lucas County Prosecuting Attorney, John A. Borell, Kevin A. Pituch, and Elaine B. Szuch, Assistant Prosecuting Attorneys, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Relator-appellant, State of Ohio ex rel. King Road Holdings, Ltd., appeals the October 13, 2025 judgment of the Lucas County Court of Common Pleas, granting judgment on the pleadings in favor of respondents-appellees, the Lucas County Engineer

and the Lucas County Board of Commissioners (collectively, "the county"). For the following reasons, we affirm.

## I. Background

{¶ 2} King Road Holdings, Ltd. owns property at 3611 King Road in Sylvania Township. This property is situated at the intersection of King Road and University Parks Trail, a pedestrian and bicycle path maintained by Metroparks Toledo. At some point—KRH does not allege when—the Lucas County Engineer installed a traffic light at the intersection of King and the trail and placed a stop bar immediately in front of KRH's driveway, the only entrance to the property. There is no sign instructing motorists to avoid blocking the driveway, thus when the stoplight is activated, traffic stops in front of the driveway, preventing ingress and egress to KRH's property for anywhere between 30 seconds and three-and-a-half minutes.

{¶ 3} KRH claims that the installation of the traffic light and placement of the stop bar have substantially disrupted its business operations,[1] caused a safety threat to its employees, customers, and tenants, affected its ability to rent, lease, or develop the property in the future, and negatively affected the fair market value of the property. It filed this action in mandamus seeking an order from the common-pleas court directing the county to institute an appropriation hearing to take the property and compensate it for damages, "and/or" install a second entrance to the property. Alternatively, KRH sought

---

[1] The nature of KRH's business is not specified.

2.

damages for the county's interference with its right of access to the property, which, it alleged, has created circuity of travel within its property.

{¶ 4} The county filed an answer, admitting that it installed the traffic signal to allow pedestrians and bicyclists to safely cross King Road, but denying that the installation of the traffic signal constituted a compensable taking of KRH's property. It also filed a motion for judgment on the pleadings under Civ.R. 12(C).

### A. The Parties' Arguments on the County's Civ.R. 12(C) Motion

{¶ 5} The county argued that no compensable taking occurred when it installed the traffic signal and stop bar. First, it maintained that there had been no physical taking of the property, but it also claimed that there had been no substantial or unreasonable interference with KRH's property rights because (1) the traffic signal is not located on KRH's property; (2) although access to the property may be temporarily blocked for approximately 30 seconds each time the traffic signal is activated, the traffic signal does not deny motorists access to KRH's place of business; and (3) the traffic signal only occasionally stops traffic on King Road and only during daylight when the trail is open. It likened the circumstances of the case to other cases where courts have held that changes in the directional flow of traffic making access to relators' properties less direct were not compensable takings.

{¶ 6} The county insisted that KRH's assertion that the blockage of its driveway creates circuity of travel within one's property is a legal conclusion that the trial court should ignore. It claimed that as a matter of law, the occasional use of the King Road

3.

traffic signal does not create a denial of access rising to the level of an unconstitutional taking, nor does it constitute a substantial, material, or unreasonable interference with ingress and egress to the property. The county contended that "mere circuity of travel" does not itself result in legal impairment of the right of ingress and egress where any resulting interference is shared with the general public and is necessary in the public interest to make travel safer and more efficient. It argued that here, the "denial of access" is an inconvenience shared with the general public and is needed to make travel safer. Finally, the county urged that there had been no breach of any mandatory obligation under the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"). It reiterated that the traffic signal only temporarily delays ingress and egress to KRH's property, but does not deny ingress and egress as would, for instance, a median strip preventing left turns.

{¶ 7} KRH responded that to establish a taking, it need only prove that the county substantially or unreasonably interfered with a property right—it need not prove an actual physical taking of the property. It emphasized that it possesses a private right of ingress and egress to and from its property, and the impairment of its use is a taking. KRH denied that it shares this inconvenience with the general public because the placement of the stop bar is in front of its property and access to only its property is impeded. It insisted that a total deprival of access is not needed to constitute a taking. KRH maintained that the blockage of its driveway is not a mere inconvenience of travel, but rather a direct impairment of access. It disagreed with the county that this is an

4.

occasional or temporary taking because there is no finite start and end to the taking. In any event, KRH asserted, a temporary taking can still constitute a compensable taking—that it is temporary simply impacts the measure of damages.

{¶ 8} KRH clarified that it had alleged a circuity of travel *within* its property—not a circuity of travel *to and from* its property; the former is compensable, while the latter is not. KRH explained that circuity of travel within one's property occurs when an entrance or exit is removed and another is not created. KRH distinguished cases cited by the county involving circuity of travel to and from the relators' properties. Finally, KRH pointed out that under the OMUTCD, there were other ways for the county to accomplish its goals without impeding access to KRH's property, such as by moving the stop bar or erecting a sign cautioning motorists not to block the driveway.

{¶ 9} The county replied by pointing out that there exist no cases where an Ohio court has held that the placement of a traffic signal near a relator's real property constitutes a substantial or unreasonable interference with a property right. It warned that countless claims would be filed if a property owner is permitted compensation based on the placement of a traffic light. The county contended that the placement of a traffic signal—particularly one that stops traffic only when a pedestrian asks it to do so—"can never be such a permanent interference so as to be classified as either substantial and/or unreasonable."

{¶ 10} Finally, the county disputed that the traffic signal created circuity of travel within KRH's property given that no entrance to or exit from KRH's property had been

removed. It maintained that the situation here is more akin to circuity of travel to and from real property, such as where a median has been installed preventing direct access and making travel to and from the property more difficult. It emphasized that the traffic signal only occasionally stops traffic and only when a pedestrian or bicyclist pushes the button; motorists are not permanently denied access to the driveway—they experience a delay of 30 seconds or so based on the timing of the signal and the existence of stopped traffic on King; and delay is reduced in the wintertime, when there is decreased pedestrian and bicycle traffic, and at night when the trail is closed.

## B. The Trial Court's Decision on the Civ.R. 12(C) Motion

{¶ 11} The trial court granted the county's motion and dismissed KRH's petition. It concluded that despite construing the factual allegations in KRH's favor, KRH failed to show that the installation of the stoplight constituted a compensable taking.

{¶ 12} The court recognized that an elemental right of real property is the right to access public roadways from the property, and a taking occurs when access to an abutting public roadway has been eliminated. It clarified that this right to access public roadways "does not expand to the maintenance of traffic past the property." The court acknowledged that KRH's complaint alleged that the installation of the pedestrian-activated stoplight had caused substantial interference to enjoyment of the property by eliminating access to the only means of ingress and egress. But it determined that "[d]enial of access alone is only sufficient to show a taking '[w]hen a state action completely deprives a property owner of all access to an abutting roadway.'" And here, it

6.

found, there had been no complete deprival of access to the property, nor could KRH show that "the property has been deprived of all economically viable use due to occasional 30-second delays to ingress/egress."

{¶ 13} The court cited Ohio Supreme Court case law recognizing that "[m]ere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient." It found that the potential traffic delays amount to nothing more than a mere inconvenience; the entrance was not removed; the traffic signal alters traffic on King Road as a whole, burdening not just KRH, but also the general public; and a review of Ohio case law reveals that more substantial interferences have been found not to warrant mandamus relief. The court concluded that "[t]here is no fact pattern in which this Court can find Relator's property has been taken and therefore Respondents have no legal duty to institute appropriation proceedings." It found that "[a]t worst, Relator has suffered from a minor inconvenience of access to/from the property." As such, the court held that KRH failed to establish a clear legal right requiring the county to commence appropriation proceedings.

{¶ 14} KRH appealed. It assigns the following errors for our review:

> 1. The trial court erred granting Appellees' Motion for Judgment on the Pleadings as there is (sic) genuine issues of fact that a partial taking had occurred as circuity of travel within one's property was created with the

7.

burden substantially impacting only Appellant and there is a substantial interference with the Appellant's right to access the roadway.

2. The trial court erred by failed (sic) to follow the standard for judgment on the pleadings and by not allowing the case to be decided on its merits.

3. The trial court erred by failing to use the Penn Central factors if its decision was based on financial deprivation.

## II. Law and Analysis

{¶ 15} KRH's assignments of error all pertain to its position that the trial court erred when it granted the county's Civ.R. 12(C) motion for judgment on the pleadings. In its first assignment of error, it claims that there were genuine issues of fact that circuity of travel within KRH's property was created, substantially interfering with its right to access the roadway, and KRH bore the sole burden of this interference. In its second assignment of error, KRH argues that the trial court failed to follow the Civ.R. 12(C) standard. And in its third assignment of error it contends that the trial court failed to employ the proper test applicable to general regulatory takings.

{¶ 16} The trial court granted judgment on the pleadings in favor of the county. A motion for judgment on the pleadings does not permit merit determinations of the claims asserted but is limited to resolving questions of law. *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 569-570 (1996), citing *Peterson v. Teodosio,* 34 Ohio St.2d 161, 166 1973). Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In considering a Civ.R. 12(C) motion, the trial court may review only "the complaint and

8.

the answer as well as any material incorporated by reference or attached as exhibits to those pleadings." *Walker v. City of Toledo*, 2017-Ohio-416, ¶ 19 (6th Dist.). Employing the same standard as a Civ.R. 12(B)(6) motion for failure to state a claim upon which relief may be granted, the trial court must construe as true the material allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Id.* at ¶ 18, citing *McMullian v. Borean*, 2006-Ohio-3867, ¶ 7 (6th Dist.); *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act,* 2016-Ohio-3038, ¶ 10, citing *Rayess v. Educational Comm. for Foreign Med. Graduates,* 2012-Ohio-5676, ¶ 18. If it appears from the pleadings and the materials incorporated by reference or attached as exhibits that the nonmoving party can prove no set of facts entitling it to relief, the trial court may dismiss the plaintiff's claims under Civ.R. 12(C). *Ohio Manufacturers' Assn.* at ¶ 10. We review the trial court's judgment de novo. *Reister v. Gardner*, 2020-Ohio-5484, ¶ 17.

### A. Circuity of Travel and Substantial Interference

{¶ 17} KRH argues that as an owner of property abutting a public road, it has a right to a private easement for ingress and egress. It maintains that the county may not substantially impair that right without compensation. KRH claims that a taking can occur where roadway access rights have been impaired, and it insists that a taking need not be total—it can occur where there has been substantial or unreasonable interference with access rights. It contends that the creation of circuity of travel within one's own property is compensable and argues that Ohio courts have held that the removal or shortening of entrances creates circuity of travel within the property and constitutes a taking even

9.

where some access remains. Here, KRH claims, the stop bar eliminates the existing access point to its property for significant periods with no alternate entrance, thereby creating compensable circuity within the parcel. It recounts that there had been pre-installation discussions about moving the stop bar or adding "do not block driveway" signage, but the county rejected these options, concluding that it would be "cheaper" to allow KRH's driveway to be blocked.

{¶ 18} KRH contends that the trial court incorrectly held that total denial of access is required to constitute a taking. It emphasizes that contrary to the court's opinion, the public does not share the burden here, as the stop bar affects only traffic trying to access KRH's property and no other landowner's driveway is blocked. KRH maintains that the obstruction uniquely burdens its property because right turns can be made into the property on the other side of the road even when the traffic light is activated. It disputes that delays are only 30 seconds long. KRH explains that times of peak trail use, school traffic, repeated activations, and unsynchronized lights create longer denials of ingress and egress. It argues that the taking is not "temporary" in the finite sense—it is permanent insofar as the signal is ongoing and open-ended. Alternatively, KRH notes that even a temporary taking is compensable, and appropriation is the remedy.

{¶ 19} The county responds that no physical taking occurred because the traffic signal is not on KRH's property, and it argues that no regulatory taking occurred given that the signal causes only brief, occasional delays, does not completely deny access to KRH's property, and is at most a minor inconvenience. The county maintains that KRH

10.

admitted that access is only "limited"—not denied—thereby undermining its claim of complete deprivation of access. It relies on Ohio Supreme Court authority that mere circuity of travel or less convenient access is noncompensable, and abutting property owners have no property right to traffic flow. The county analogizes the circumstances of this case to cases involving the placement of medians and dividers, where courts have found that such traffic-control measures are police-power regulations, not takings. It argues that any burden here is shared with the public and nearby properties.

{¶ 20} We begin by recognizing that mandamus is the proper procedure for resolving this conflict. Specifically, the Ohio Supreme Court has recognized that "[u]nder Ohio law, '[m]andamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.'" *State ex rel. Cuyahoga Lakefront Land, L.L.C. v. Cleveland,* 2016-Ohio-7640, ¶ 13, quoting *State ex rel. Doner v. Zody,* 2011-Ohio-6117, ¶ 53. To be entitled to extraordinary relief in mandamus, the relator must prove by clear and convincing evidence (1) a clear legal right to the requested relief; (2) a clear legal duty on the part of the respondent to provide it; and (3) the lack of an adequate remedy in the ordinary course of the law. *Id.* at ¶ 12, citing *State ex rel. Waters v. Spaeth,* 2012-Ohio-69, ¶ 6.

{¶ 21} Under Section 19, Article I of the Ohio Constitution, "[p]rivate property shall ever be held inviolate, but subservient to the public welfare. . . . [W]here private property shall be taken for public use, a compensation therefor shall first be made in money . . . and such compensation shall be assessed by a jury, without deduction for

11.

benefits to any property of the owner." Likewise, the Fifth Amendment to the United States Constitution prohibits the taking of private property "for public use, without just compensation."

{¶ 22} "[T]o establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right." *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 206 (1996). "Such an interference may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." *Id.,* citing *Smith v. Erie RR. Co.*, 134 Ohio St. 135 (1938), paragraph one of the syllabus. A taking may occur even where the owner is only partially deprived of the uses of his land. *Id.* at 207, quoting *Mansfield v. Balliett,* 65 Ohio St. 451, 471 (1902).

{¶ 23} It is well-established that "[o]ne of the elemental rights growing out of the ownership of a parcel of real property is the right to access abutting public roadways." *Id.,* citing *State ex rel. Merritt v. Linzell*, 163 Ohio St. 97 (1955), paragraph one of the syllabus. In *Linzell*, the Ohio Supreme Court explained that "[a]n owner of property abutting on a public highway possesses, as a matter of law, not only the right to the use of the highway in common with other members of the public, but also a private right or easement for the purpose of ingress and egress to and from his property, which latter right may not be taken away or destroyed or substantially impaired without compensation therefor." *Linzell* at paragraph one of the syllabus.

{¶ 24} Respecting the right to ingress and egress to and from one's property, a government "may, in the lawful exercise of police power, regulate a property owner's

12.

easement of access without compensation so long as there is no denial of ingress and egress." *State ex rel. Habash v. Middletown*, 2005-Ohio-6688, ¶ 15 (12th Dist.). To that end, courts recognize a distinction between the regulation of public roadways in such a manner as to cause circuity of travel *to and from* the property—which is *not* compensable—and circuity of travel *within* the property—which *may* be compensable. *Id.*

{¶ 25} Circuity of travel *to and from* one's property occurs when a street or highway project causes access to the property to be less direct. In *Richley v. Jones*, 38 Ohio St.2d 64, 66 (1974), for example, a median was constructed, which prevented left turns into or out of the property. In *State ex rel. Noga v. Masheter*, 42 Ohio St.2d 471 (1975), a highway was widened, a curb barricade was installed, and a service road was constructed, all of which prevented access to the relator's property straight from the highway, instead creating a less direct route to the property via the service road. Those cases recognize the well-established rule that "[m]ere circuity of travel, necessarily and newly created, to and from real property does not of itself result in legal impairment of the right of ingress and egress to and from such property, where any resulting interference is but an inconvenience shared in common with the general public and is necessary in the public interest to make travel safer and more efficient." *Linzell* at 102.

{¶ 26} "Circuity of travel *within* one's own property occurs when one entrance or exit way is removed and another is not created." (Emphasis added.) *Habash* at ¶ 16. Circuity of travel created within one's property "is compensable where the burden is

13.

placed solely on the owner's property and not on the general public." *Id.* at ¶ 16. As alluded to above, "the state may, in the lawful exercise of police power, *regulate* a property owner's easement of access without compensation so long as there is no denial of ingress and egress." (Emphasis in original.) *Castrataro v. City of Lyndhurst,* 1992 WL 209578, *3 (8th Dist. Aug. 27, 1992). Such regulation "must be consistent with and promote the safety, comfort, health and general welfare of the public." *Id.* "The critical issue . . . is whether the action taken by the state amounts to a mere regulation to promote the public safety, comfort, health and welfare or whether such action amounts to a compensable taking." *Id.* To constitute a taking, the property owner must show "a substantial, material or unreasonable interference with the physical access to or from the property." *Id.* The question in these cases is "whether a regulation becomes so substantial as to amount to a taking." *Id.*

{¶ 27} In *Castrataro,* the relators maintained two easements of access to and from their property via driveways located on the eastern and western sides of the property. The respondent erected a barrier completely blocking the westerly driveway. The Eighth District found that by destroying relators' easement of access via the westerly driveway, the respondent "effectuated a taking of [relators'] property rights which so substantially hinder[ed relators'] access to and from Mayfield Road as to constitute a compensable taking pursuant to the United States and Ohio Constitutions." *Id.* at * 4.

{¶ 28} In *State of Ohio ex rel. Thieken v. Proctor,* 2006-Ohio-4596, ¶ 14 (10th Dist.), relator owned property at the corner of State Routes 7 and 775, which was being

14.

operated as a gas station. The Ohio Department of Transportation undertook a curbing project that reduced access to the gas station via S.R. 7 from 116 feet to a single ingress-egress of only 30 feet in width. Relator sought an order requiring ODOT to initiate appropriation proceedings and compensate him for the substantial or unreasonable interference with access to his property. He argued that the curbing unreasonably and substantially interfered with access to his property, made it impossible to maintain the property as a gas station—which experts agreed was the highest and best use of the property—and amounted to a compensable taking. Relator maintained that it was essential to have two curb cuts along S.R. 7 to maintain the property as a gas station. He presented evidence that customers who drive large trucks must stop traffic on S.R. 7 and back out of the property onto the roadway, causing a safety hazard. ODOT argued that access had merely been regulated, not denied, and the burden was shared by the general public—a contention that relator disputed. The Tenth District found that there was a genuine issue of material fact preventing summary judgment in favor of ODOT.

{¶ 29} In *Hilliard v. First Indus., L.P.,* 2004-Ohio-5836, ¶ 2 (10th Dist.), the city undertook a project that eliminated a full-access point to relator's property, created only a limited-access point approximately 1,500 feet away from the original access point, and destroyed an internal service road leading to relator's loading dock. Only relator's property was affected by this project. The court explained that the project had caused circuity of travel within relator's property because it had taken away a point of ingress

and egress without creating another point of ingress and egress, and it was not an inconvenience shared with the general public.

{¶ 30} In *State ex rel. Balunek v. Marchbanks,* 2023-Ohio-2517, ODOT destroyed the driveways that connected the property to East 93rd Street, eliminated the property's easement access to Woodland Avenue, and did not replace the driveways or provide alternative curb-cut access. This construction rendered the property inaccessible to lawful vehicular traffic. To obtain access, the property owner would need to obtain a permit from the city of Cleveland and rebuild the driveways himself. The Ohio Supreme Court held that "ODOT's construction project has deprived the property of all access to an abutting roadway and thus constitutes a taking." *Id.* at ¶ 12.

On the other hand, in *City of Steubenville v. Schmidt*, 2002-Ohio-6894, ¶ 20 (7th Dist.), the relator owned land on which a Burger King was operated; a McDonald's was located just west of relator's property. Burger King and McDonald's shared an entrance to their parking lots. Because of heavy traffic in the area, the city moved a stoplight, widened a road, and repaved and widened a rear entrance to relator's parking lot. The stoplight was originally positioned in a manner that allowed a left-hand turn directly into the Burger King and McDonald's parking lot. Movement of the stoplight made left-hand turns into and out of the parking lot more difficult. The court found that there had been no compensable taking arising from the movement of the traffic light because all entrances and exits remained intact, the rear entrance was greatly improved, and relator's property was not the only property affected—the McDonald's property was affected too.

16.

The court opined that movement of the stoplight and widening of the road was more akin to the placement of a median strip, the addition of which would constitute a proper exercise of police power, create circuity of access to the property, and be deemed noncompensable.

{¶ 31} No Ohio case has directly addressed the precise issue raised by KRH, but a Georgia court considered a similar issue *in Eastside Properties v. Dept. of Transp.,* 498 S.E.2d 769 (Ga.App. 1998). There, the plaintiff had one driveway abutting the public road. To improve the flow of traffic and increase safety, DOT constructed traffic control devices and repositioned stop bars in order to prevent unsafe and uncontrolled movements of traffic across and along the subject street. The project did not physically alter the plaintiff's driveway, but the plaintiff alleged, inter alia, that the repositioning of the stop bar resulted in its entrance being blocked more than 50 percent of the time each business day. Plaintiff argued that the repositioning of the stop bar constituted a compensable taking.

{¶ 32} Under Georgia law, the court first considered whether the inconvenience caused by the repositioning of the stop bar was shared by the public in general, which was not compensable, or whether it was special to the landowner, which may be compensable. The court observed that "'*if [a landowner] has the same access to the highway as he did before the closing, his damage is not special,* . . . although it may be greater in degree, as that of the general public, and he has lost no property right for which he is entitled to compensation.'" (Empasis in original.) *Id.* at 772, quoting *Dougherty*

17.

*County v. Snelling,* 208 S.E.2d 362 (Ga.App.1974).[2] The court noted that the Georgia

Supreme Court had recognized that inconvenience caused by traffic flow and traffic

volume is an inconvenience shared by the public in general. Moreover, the court

concluded that while inconvenient to the plaintiff, the repositioning of the stop bar did

not give rise to a compensable taking because the plaintiff's driveway had not been

altered.

{¶ 33} Here, we find that installation of the traffic signal and placement of the stop

bar created neither circuity of travel to and from KRH's property nor circuity of travel

within KRH's property. It did not reroute access to the property, nor did it eliminate an

access point. The light and the stop bar merely regulate traffic—a proper exercise of

police power—creating brief, intermittent impediments to access lasting between 30

seconds to three-and-a-half minutes each time the signal is activated. The length and

frequency of the blockage vary depending on the amount of pedestrian and motor-vehicle

traffic. The inconvenience caused by the traffic signal is shared with the general public

insofar as motorists, too, are unable to pass the intersection when the traffic signal is

activated. All persons stopped by the light experience a delay in getting to their

destinations—not just motorists who are seeking to turn in or out of KRH's parking lot.

As such, we conclude that as a matter of law, the delays caused by the installation of the

stoplight and placement of the stop bar do not constitute a substantial, material, or

---

[2] The quote attributed to *Snelling* is not contained in that decision. The quoted language does appear in other cases that predate *Snelling,* including *Tift Cnty. v. Smith,* 131 S.E.2d 527, 530 (Ga. 1963).

18.

unreasonable interference with the physical access to or from or within KRH's property, KRH has no clear legal right to the relief requested, and the county has no clear legal duty to provide the relief requested.

{¶ 34} We find KRH's first assignment of error not well-taken.

### B. The Standard for Granting Judgment on the Pleadings

{¶ 35} KRH argues that the court improperly resolved disputed facts when it concluded that the traffic signal caused only 30-second delays, rather than the variable delays alleged by KRH. It complains that no discovery occurred to determine the total time that access to its property was blocked.

{¶ 36} The county responds that discovery would not change the undisputed fact that any delays caused by the installation of the traffic signal and stop bar are brief and occasional. It insists that no Ohio appellate court has found a traffic signal like this to be a compensable taking.

{¶ 37} It does appear that the trial court assumed that the activation of the light causes only 30-second delays even though KRH alleged that the delays could be longer and were variable. In considering a Civ.R. 12(C) motion, the trial court must construe as true the *material* allegations in the complaint. *Walker*, 2017-Ohio-416, at ¶ 19 (6th Dist.). Here, given our conclusions that (1) the installation of the light and placement of the stop bar did not eliminate ingress and egress, and (2) inconvenience caused by the light was shared with the general public, we cannot say that the allegations concerning the length or frequency of the delays caused by the stoplight were *material*. *See, e.g., State ex rel.*

19.

*Midwest Pride IV, Inc.,* 75 Ohio St.3d at 570 (finding that the one fact the court failed to construe in appellant's favor was not material).

{¶ 38} As explained earlier in this decision, we perform a de novo review of a trial court judgment granting a Civ.R. 12(C) motion. *Reister*, 2020-Ohio-5484, at ¶ 17. "De novo review means that this court conducts an 'independent review of the trial court's decision without any deference to the trial court's determination.'" (Citation omitted.) *Hoeflinger v. AM Mart, LLC,* 2017-Ohio 7530, ¶ 15 (6th Dist.). In our de-novo review of the trial court's decision, we have accepted as true KRH's assertion that delays may be as long as three-and-a-half minutes and vary in frequency. We have concluded that regardless of the frequency or length of the delays caused by the stoplight, installation of the stoplight and placement of the stop bar did not give rise to a compensable taking. As such, any claim that the trial court erred by resolving disputed facts against KRH has been subsumed by our appellate review.

{¶ 39} We find KRH's second assignment of error not well-taken.

### C. Failure to Apply the *Penn Central* Test

{¶ 40} KRH argues that despite the trial court's statement to the contrary, in cases involving the denial or impairment of access to abutting roads, the landowner need not establish the deprivation of all economically viable uses of the land. It maintains that this "is the standard for a complete regulatory taking, but not for partial takings." KRH maintains that this case involves a right of access and not a general regulatory taking, thus it was not required to show the loss of all economically viable uses of the property.

20.

It insists that even if this case involved a general regulatory taking, the trial court erred by failing to apply the factors set forth in the U.S. Supreme Court's decision in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) for determining "when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." Those factors include (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with investment-backed expectations, and (3) the character of the governmental action.

{¶ 41} The trial court's decision suggests that it believed that KRH was required to establish the deprivation of all economically viable uses of the land ("Relator [cannot] show the property has been deprived of all economically viable use due to occasional 30-second delays to ingress/egress. . . . [N]owhere has Relator alleged a deprivation of all economically viable use of the property or having to shut down the business.")

{¶ 42} We agree with KRH that it was not required to establish the loss of all economically viable uses of the property—it was required to show only that the county's action substantially or unreasonably interfered with its right of access to the abutting roadway. *OTR*, 76 Ohio St.3d at 207; *Balunek*, 2023-Ohio-2517, at ¶ 10. But as for the trial court's failure to apply the *Penn Central* factors, Ohio courts do not apply *Penn Central* to claims involving interference with the right of access to an abutting roadway. They apply the test we applied above—whether the government's action substantially or unreasonably interfered with the landowner's right of access to the abutting roadway.

21.

Because the *Penn Central* factors are not applicable, the trial court did not err in failing to apply them.

{¶ 43} We find KRH's third assignment of error not well-taken.

### III. Conclusion

{¶ 44} Installation of the traffic signal and accompanying stop bar created neither circuity of travel to and from KRH's property nor circuity of travel within KRH's property. The light and the stop bar merely regulate traffic, creating brief, intermittent impediments to access lasting between 30 seconds to three-and-a-half minutes. The inconvenience caused by the traffic signal is shared with the general public because all motorists stopped by the light experience a delay in getting to their destinations—not just motorists who are seeking to turn in or out of KRH's parking lot. As a matter of law, the delays caused by the installation of the stoplight and placement of the stop bar do not constitute a substantial, material, or unreasonable interference with the physical access to or from KRH's property. We find KRH's first assignment of error not well-taken.

{¶ 45} Although the trial court appears to have assumed that the activation of the light caused 30-second delays when KRH had alleged that the delays were longer and were variable, allegations concerning the length or frequency of the delays caused by the stoplight were not material. We find KRH's second assignment of error not well-taken.

{¶ 46} The *Penn Central* factors are not applicable to claims involving interference with the right of access to an abutting roadway, thus the trial court did not err in failing to apply these factors. We find KRH's third assignment of error not well-taken.

22.

**{¶ 47}** We affirm the October 13, 2025 judgment of the Lucas County Court of Common Pleas.  KRH is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, J. _____

_____

Myron C. Duhart, J. _____
CONCUR.
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.